STATE v. MULLEN

[98 N.C. App. 472 (1990)]

## III

---

STATE OF NORTH CAROLINA v. LARRY MULLEN

No. 891SC603

(Filed 15 May 1990)

1. **Appeal and Error § 155 (NCI4th)— possession of cocaine— defendant's statements as to how drugs could be hidden—no objection at trial**

   Defendant in a cocaine prosecution did not object at trial and did not properly preserve for appeal his objection to testimony by an undercover agent regarding defendant's description of how drugs could be hidden to prevent detection by law enforcement officers.

   **Am Jur 2d, Appeal and Error § 553.**

2. **Criminal Law § 169.3 (NCI3d)— cocaine—testimony regarding defendant's statements of amounts sold—same testimony admitted elsewhere without objection**

   An assignment of error by defendant in a cocaine prosecution to testimony from an undercover agent about the amount of drugs defendant sold on a weekly basis was overruled where the same testimony from two other witnesses was admitted without objection.

   **Am Jur 2d, Appeal and Error § 553.**

STATE v. MULLEN

[98 N.C. App. 472 (1990)]

3. **Criminal Law § 67 (NCI3d) — cocaine — identification of defendant's voice over radio transmitter**

The trial court in a cocaine prosecution did not err by admitting testimony concerning the identity of defendant's voice as the voice heard on a radio transmitter where a voir dire had been held and the witness had testified that he had personally known defendant for several years, had had conversations with defendant on several occasions prior to the transactions leading to defendant's arrest, and described distinctive characteristics in defendant's tone, timbre, and speech patterns. The fact that the prior circumstances described by the witness did not involve the same means of monitoring defendant used here only goes to the weight of the evidence.

**Am Jur 2d, Evidence §§ 368, 383, 1143.**

APPEAL by defendant from judgments entered 26 January 1989 by *Judge Thomas S. Watts* in PASQUOTANK County Superior Court. Heard in the Court of Appeals 17 January 1990.

This is an appeal from a conviction on three indictments each charging felonious possession of a Schedule II narcotic with intent to sell and deliver, felonious sale of a Schedule II narcotic, felonious delivery of a Schedule II narcotic and keeping a place for controlled substances. A jury convicted defendant of all charges except those related to maintaining a dwelling house for the purpose of unlawfully selling cocaine. Defendant received consecutive sentences totalling thirty years.

On 1 September 1988 Kent O'Neal Felton, an undercover agent, went to defendant's residence to purchase cocaine. At this time Agent Felton was wearing a concealed voice transmitter so that other agents (not on the scene) could hear his conversation with defendant. After purchasing the drugs, Agent Felton turned the drugs over to his supervising officers. On 2 September 1988, Agent Felton returned to defendant's residence still wearing the voice transmitter, purchased an additional amount of cocaine and discussed with defendant the future purchase of larger amounts of cocaine. During this conversation, defendant also talked to Agent Felton about how to conceal drugs to avoid detection by law enforcement officers. Agent Felton returned to defendant's residence on 5 September 1988 to confirm with him the purchase of the larger quantity of cocaine. At that time, he was still wearing the

STATE v. MULLEN

[98 N.C. App. 472 (1990)]

voice transmitter. On 6 September 1988, Agent Felton went to defendant's residence to purchase the cocaine. He gave defendant the money needed for the purchase but did not receive any cocaine. Finally, on 7 September 1988, Agent Felton still wearing the voice transmitter returned to pick up the larger quantity of cocaine and defendant demonstrated how the cocaine could be divided into smaller quantities to sell. The narcotics purchased on each occasion were turned over to supervising officers.

Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Twiford, O'Neal and Vincent, by Russell E. Twiford and Edward A. O'Neal, for defendant-appellant.*

EAGLES, Judge.

[1] Defendant first assigns as error the admission of testimony by Agent Felton concerning defendant's statements to him describing how drugs could be hidden to prevent detection by law enforcement officers. Defendant argues that this testimony was "unfairly prejudicial and irrelevant in that it implied to the jury that the defendant was a person of bad character because of his extensive criminal knowledge in how to allude (sic) apprehension or arrest in dealing in or handling drugs." Defendant contends that evidence offered in the proffered testimony constituted other wrongs or criminal acts and was inadmissible character evidence. Defendant argues that even if Agent Felton's statement was admissible under Rule 404(b), the evidence should have been excluded under the Rule 403 balancing test since it was unfairly prejudicial. Defendant contends that he was denied a fair trial "as his presumption of innocence was removed as a result of his past dealings in drugs and [this] impermissibly placed a burden on him having to prove his innocence." We disagree.

Initially, we note that "[a]n assignment of error must be based on an exception duly noted and may not present by amplification a question not embraced in the exception." *Hennis Freight Lines, Inc. v. Burlington Mills Corp.*, 246 N.C. 143, 148, 97 S.E.2d 850, 854 (1957). Here, defendant in his discussion of assignment of error No. 1 relies on the following testimony during trial:

STATE v. MULLEN

[98 N.C. App. 472 (1990)]

Q Now, did you have any other discussions with Mr. Mullen concerning controlled substances and the—

A Yes, I did. We were discussing also—I was discussing, asking him where would be a good place to hide the substance in my car, or whichever vehicle I was driving.

Q What did Mr. Mullen say when you asked him about hiding these substances?

A Well, he went into full detail about where to hide it, such as behind your license plates, under the foam up in your car, in the different places.

Q Did Mr. Mullen physically show you any places, sir?

A Yes, sir. Yes, he did.

Q Would you describe what Mr. Mullen did concerning showing you some places?

A Well, we went out into the yard and we approached my car. And being that my license plates didn't come down, he indicated, you know, that it would be impossible to hide it there. So he showed me underneath my hood this—some foam, and about putting it behind foam, taping it behind form (sic).

THE COURT: Behind—you are saying behind the what?

A Up in the hood of your car there's a foam.

THE COURT: Insulation?

A Yes, I guess that's what it is.

Q (By Mr. Carter) You are saying foam, f-o-a-m?

A Foam, yes.

THE COURT: Mr. Tade, don't you be coaching the witness[.] I am not going to tolerate that.

Q (By Mr. Carter) He was showing you the location under the hood of your car?

A Yes, sir.

Q What else, if anything, did Mr. Mullen point out to you at that time?

A He also pointed out about using black pepper, that it would eliminate the dog, the canine dog, from smelling the substance.

Q Did Mr. Mullen indicate how one used that black pepper to you, sir?

A Yes. He explained to put the substance in one bag, and put that bag into the bag with the pepper in it.

Q When you say put the substance into a bag, what did Mr. Mullen refer to, what was he referring to?

A Cocaine.

Mr. Busby: Objection. EXCEPTION NO. 1

THE COURT: Overruled.

It is clear from the record that defendant failed to object to testimony concerning the statements he made to Agent Felton on how to hide controlled substances to avoid detection by law enforcement officers. Defendant has not properly preserved his objection to the above-mentioned testimony for appeal. Accordingly, this assignment of error must fail.

[2] Next, defendant assigns as error the trial court's admission of testimony from Agent Felton concerning the amount of drugs which the defendant sold on a weekly basis "because this testimony was unfairly prejudicial and irrelevant in that it implied to the jury that the defendant was a person of bad character because of the amount of drugs he alleged he sold while bragging to an undercover agent."

Initially, we note that the record indicates that the same testimony was admitted without objection from two other witnesses. During trial, Sergeant Joe Tade testified that "[t]hen they engaged in some conversation concerning controlled substances, this being that Mr. Mullen made the statement that he usually sold an ounce and a half on weekends and a half ounce during the week." Defendant did not object to this testimony. Captain W. P. Leary testified on direct examination that "[t]hey engaged in a little conversation concerning the drug business, and the subject advised him he would sell approximately a half an ounce during the week days and on weekends that he had sold approximately an ounce." Defendant did not object to this testimony. "Where evidence is admitted over

objection, and the same evidence is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984). Accordingly, this assignment of error is overruled.

[3] Finally, defendant assigns as error the trial court's admission of testimony from Sergeant Tade concerning the identity of defendant's voice as the voice heard on a voice transmitter. Defendant argues that the "identification of the defendant's voice over the radio transmitter by Sgt. Tade without ever having heard defendant's voice on a radio transmission previously is an identification which does not meet the requirements of Rule 901(b)(5)." We disagree.

Initially, we note that G.S. § 8C-1, Rule 901(b)(5) provides for the authentication or identification of a voice where there is "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." "Radio communications, by analogy to telephone conversations, are governed by the rules of evidence regulating the admission of oral statements made during a face-to-face transaction once the identity of the speakers is ascertained." *State v. Connley*, 295 N.C. 327, 341, 245 S.E.2d 663, 671 (1978), *remanded for other reasons*, 441 U.S. 929, 99 S.Ct. 2046, 60 L.Ed.2d 657 (1979); *see also State v. Love*, 296 N.C. 194, 250 S.E.2d 220 (1978). "As in the case of telephone conversations, a foundation must be laid for the admission of testimony concerning the content of the transmitted message. The identity of the caller may be established by testimony that the witness recognized the caller's voice, or by circumstantial evidence." 296 N.C. at 199, 250 S.E.2d at 224. *Love, supra*, involved communication through radio dispatch.

In *Ingle v. Allen*, 69 N.C. App. 192, 317 S.E.2d 1, *disc. rev. denied*, 311 N.C. 757, 321 S.E.2d 135 (1984), this court addressed whether a telephone call allegedly made by the defendant was properly authenticated. In *Ingle*, plaintiff testified that she could recognize defendant's voice over the telephone and that she had spoken to defendant " 'quite a bit,' 'a lot,' and 'many times.' " Defendant argued that this testimony was insufficient to establish that plaintiff had properly identified defendant as the speaker. This court held that "[p]laintiff's testimony is admissible if the 'identity of the person be shown directly or by circumstances somewhere in the development of the case, either then or later.' "

*Id.* at 198, 317 S.E. 2d at 4. "Any lack of assurance or uncertainty on the part of plaintiff identifying defendant by voice recognition affects only the weight and credibility, and not the admissibility of her testimony. 'As a general rule, the weight of voice recognition is a question of fact for the jury.'" *Id.*

Here, defendant erroneously contends that Rule 901(b)(5) should be interpreted to mean that the authentication of a voice over wire transmission can only be properly identified by testimony of one who heard the voice on prior occasions under the same circumstances. Rule 901(b)(5) merely provides that the identification need only be under circumstances connecting it with the alleged speaker. Prior to the admission of Sergeant Tade's testimony, the trial court allowed a voir dire examination of the witness concerning his ability to recognize the voices that he heard over the transmitter or wire. Sergeant Tade testified both during voir dire examination and direct examination that he had personally known defendant for several years and had conversations with defendant on several occasions prior to the transactions leading to defendant's arrest. Sergeant Tade also testified about distinctive characteristics in the defendant's tone, timbre and speech pattern. Sergeant Tade stated that defendant stuttered a little and had a tendency to say, "'Yeah, uh-huh' a lot." After making detailed findings of fact and conclusions of law, the trial court concluded that Sergeant Tade could testify as to the identity of those persons he overheard over the transmitter. This evidence was sufficient to establish Sergeant Tade's familiarity with defendant's voice. The fact that these prior circumstances did not involve the same mechanical means as used in the monitoring of defendant only goes to the weight of the evidence. Accordingly, the trial court properly admitted the testimony of Sergeant Tade. This assignment of error must also fail.

Accordingly, we find no error.

No error.

Judges PHILLIPS and ORR concur.