414 S.E.2d 347 (1992)
105 N.C. App. 446
Michelle Marie WILSON, By and Through her Guardian Ad Litem, Ronald C. WILSON, Plaintiff-Appellant,
v.
Dean BELLAMY, Doug Mumma, Donnie Baucom, Chris Barco, Steve Ghoulis, Eddie Medford, Jeff Gordon, Lambda Chi Alpha Fraternity, Zeta Chapter, an unincorporated association; Lambda Chi Alpha Fraternity Incorporated, LCA-Alumni Properties, a North Carolina Limited Partnership, Defendants-Appellees.
No. 9130SC245.
Court of Appeals of North Carolina.
March 3, 1992.
*353 Patrick U. Smathers, P.A. by Patrick U. Smathers, Canton, for plaintiff-appellant.
Morris, Bell & Morris by William C. Morris, Jr. and William C. Morris, III, Asheville, for defendant-appellees.
EAGLES, Judge.

I
We note initially that the appellant did not include a copy of the court reporter's certification of delivery of transcript or a copy of the appellant's certification of service of the proposed record on appeal to the appellee in the record on appeal. (The record does include a certificate of service dated 7 March 1991 which is incorrectly designated as being for the proposed record on appeal. This certification could not have been for the proposed record on appeal as the appellee served its objections to the appellant's proposed record on appeal on 21 February 1991.) Thus, we are unable to determine from the record before us whether the proposed record on appeal or the record on appeal was timely filed. However, in our discretion, we choose to address this appeal on its merits. N.C.R.App.Pro. 2.

II
Plaintiff raises seventeen assignments of error. Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure provides that: "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Here, the plaintiff's brief fails to both set out and offer support for assignments of error numbers 5, 6, 7, 8, 9, 10, 11, and 15. Accordingly, each has been abandoned.

III
In her first, second, third and fourth assignments of error the plaintiff alleges that the trial court erred by sustaining objections of the defendant to plaintiff's questions of Mr. Ghoulis and Mr. Barco concerning alcohol use and instructions from defendant's national fraternity advisor regarding alcohol use. "`It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify.'" River Hills Country Club, Inc. v. Queen City Automatic Sprinkler Corp., 95 N.C.App. 442, 446, 382 S.E.2d 849, 851 (1989) (citing State v. Simpson, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) and N.C.Gen.Stat. Sec. 8C-1, R.Evid. 103 (1988)). Because the record before us does not disclose what the witnesses' testimony would have been had they been permitted to testify, this assignment is overruled.

*354 IV
In her twelfth and fourteenth assignments of error, plaintiff argues that the trial court erred by allowing the defense to elicit testimony from the plaintiff concerning her prior sexual experiences. Our disposition does not require that we reach the merits of this assignment. However, because this issue is likely to arise on remand we choose to address it here. Lowder v. All Star Mills, Inc., 82 N.C.App. 470, 478, 346 S.E.2d 695, 700 (1986).
During defense counsel's cross-examination of the plaintiff the following exchange took place:
Q. How long have you been having sexual relations prior to the 8th day of October, 19887?
MR. SMATHERS: Objection.
THE COURT: Overruled.
MR. SMATHERS: Your Honor, he didn't ask for a specific answer. He said, "How long prior to."
THE COURT: Overruled.
A. About two and a half years.
Q. Pardon?
A. Two and a half years.
Q. You started when you were fourteen, I believe?
A. Right.
Upon further cross-examination the following exchange occurred:
Q. LINE 21. "Before the date of October 8, 1987, had you ever before passed out because of drinking?" Did I ask you that question?
MR. SMATHERS: Objection. Relevancy.
THE COURT: Overruled.
A. Yes.
Q. And did you not answer and say, "Once before"?
A. Yes.
Q. And didn't I ask you, "When was that?" And you said, "The night that I went to the Delta Sig party after I got home." Wasn't that your question and answer you gave?
A. Yes.
Q. And then I asked you, "That happened after you got back to your dormitory?" And your answer was, "Yeah, like I came home and my boyfriend had called me on the phone and I had answered the phone. But like after he called me I guess I passed out because when he got there"
MR. SMATHERS: Objection.
Q. "he said that he"
MR. SMATHERS: Relevance.
THE COURT: Overruled.
Q. "he said that he undressed me and like put me in bed but I don't remember him moving me around or anything." Isn't that correct?
A. Yes.
Plaintiff argues that the questions in each colloquy are irrelevant and therefore inadmissible. The defense, however, argues that "[t]he purpose of evoking these responses from the plaintiff was to demonstrate to the jury that the probabilities were that the plaintiff consented to alleged but unproved sexual overtures rather than rejecting them." We agree with the plaintiff.
Generally, all relevant evidence is admissible and all non-relevant evidence is not admissible. N.C.R.Evid. 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R.Evid. 401.
In State v. Younger, 306 N.C. 692, 295 S.E.2d 453 (1982), our Supreme Court noted that at one time evidence of a prosecuting witness's general reputation for unchastity was admissible during a rape trial to attack her credibility and show her proneness to consent to sexual acts. Id. at 695, 295 S.E.2d at 455. However, the court continued and pointed out that "[t]oday, `common sense and sociological surveys make clear that prior sexual experiences by a woman with one man does not render her more likely to consent to intercourse with an often armed and frequently strange attacker.'" Id. at 695-96, 295 S.E.2d at 455 (quoting State v. Fortney, 301 N.C. 31, 38, 269 S.E.2d 110, 114 (1980)). We note that *355 this holding was reached only after the enactment of G.S. 8-58.6, the former rape victim shield statute, now codified in N.C.R.Evid. 412. G.S. 8-58.6 (cross-reference). We also note that our research reveals that, to date, Rule 412 has only been applied in criminal cases. However, the logic applied behind the law espoused in Younger under the auspices of G.S. 8-58.6, is of similar import in the civil arena. Nothing elicited by the defense through the objected to questions above would tend to indicate that the plaintiff gave her consent to the acts allegedly performed by the individual defendants. Furthermore, this court has specifically held that "testimony as to the victim's alcohol consumption with other people in party settings has no tendency to prove that the victim consented to sexual activity with the defendant on the day in question." State v. Cronan, 100 N.C.App. 641, 644, 397 S.E.2d 762, 764 (1990), disc. review dismissed, 328 N.C. 573, 403 S.E.2d 516 (1991). Neither the plaintiff's testimony as to the length of time she has engaged in sexual conduct nor the incident occurring after the Delta Sig party is relevant here.

V
In her thirteenth assignment of error the plaintiff argues that the trial court erred by excluding from evidence the testimony of Mr. Douglas Davis (Mr. Davis), an Assistant Vice Chancellor for Student Development at Western Carolina University, as well as a letter that Mr. Davis wrote to Mr. Matt Barden (Mr. Barden), then president of the local chapter of Lambda Chi Alpha fraternity. Plaintiff argues that this evidence is "relevant in both time and circumstances" because it indicates "a pattern of alcohol abuse and knowledge of such abuse by the fraternity and its officers...." We disagree and hold that the evidence is not relevant as to time or circumstance.
Generally, all relevant evidence is admissible and all non-relevant evidence is not admissible. N.C.R.Evid. 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R.Evid. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." N.C.R.Evid. 403.
The substance of Mr. Davis' voir dire testimony was devoted to laying a foundation for introduction of the letter which he wrote Mr. Barden on 11 November 1986. Thus, disposition of this assignment turns upon whether the letter itself was properly admissible into evidence. The letter, in pertinent part, reads as follows:
This letter is to confirm our conversation of November 11, 1986 concerning recent incidents by the Lambda Chi Alpha Fraternity, i.e., providing alcohol to non-drinking age individuals (this was discussed with the fraternity by the adviser); charging admission and providing alcoholic beverages which constitutes illegal sales; alcohol being sold by the drink; posting public invitations and holding open type parties.
After reciting the above incidents, Mr. Davis imposed various restrictions on the fraternity including, but not limited to, placing the fraternity on probationary status through the school's 1987 spring break.
This letter is neither relevant to time or circumstance. The incidents cited in Mr. Davis's letter warranting imposition of restrictions on the fraternity must have occurred before the 11 November 1986 date of the letter. The incident at issue in this case occurred on 8 October 1987 almost a full eleven months after the incidents in Mr. Davis' letter and well after the probationary status was to have terminated. Also, the letter is addressed to the then president, Mr. Matt Barden. However, Mr. Barden's name does not appear on the Lambda Chi Alpha membership roster (plaintiff's exhibit 8) purporting to cover the time of the alleged incident. The letter does not indicate whether a copy was sent to the other fraternity officers who are listed on the membership roster.
*356 Moreover, the incidents recited in the letter leading to the imposition of restrictions are not relevant to the circumstances of the instant case. The incidents alleged in the letter do include "providing alcohol to non-drinking age individuals." However, they also include several other activities not involved in the instant case: charging admission to parties where alcohol is sold; selling alcohol by the drink; posting public invitations; and holding open parties. Furthermore, even if the letter was deemed to be relevant, the probative value of the letters contents would be substantially outweighed by the danger of unfair prejudice. In short, the letter would unfairly tend to lead jurors to believe that because the fraternity had done things wrong in the past, the fraternity must have done something wrong here. We agree with the trial court and overrule this assignment of error.

VI
By her sixteenth assignment of error plaintiff argues that the trial court committed reversible error by concluding that Mr. Price failed to properly authenticate a voice he heard in a telephone call as that of Mr. Gordon, and then striking Mr. Price's testimony. We disagree.
"G.S. § 8C-1, Rule 901(b)(5) provides for the authentication or identification of a voice where there is `[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.'" State v. Mullen, 98 N.C.App. 472, 477, 391 S.E.2d 520, 523 (1990). Here, during direct examination Mr. Price testified:
Q. Do you know Jeff Gordon?
A. I've known of him. I've met him.
Q. And prior to October 8, 1987, had you occasion to talk with Jeff Gordon?
A. Yes, I had.
Q. For what purpose?
A. I was in a band and we were inquiring if we could of the fraternity asking if we could play at a party.
Q. Okay. Had you occasion to talk to him on the telephone before?
A. Before what?
Q. October 8th of `87?
A. No, I don't think so.
Q. At the time that you talked to him, did you talk with him face to face?
A. Yes.
Q. And approximately how many times have you done that?
A. Maybe twice.
However, on cross-examination, Mr. Price testified:
Q. And you said that the voice on the other end of this telephone call that you got said, "Hello, I'm Jeff Gordon."
A. I don't know if that is what he said.
Q. Is that the substance of what he said?
A. Yes, he identified himself.
Q. He identified himself as Jeff Gordon?
A. Yes.
Q. Other than that how do you know it was Jeff Gordon?
A. Other than that?
Q. Yes.
A. No.
Q. You have no other way except for what he said to know that was Jeff Gordon?
A. Correct.
Here, Mr. Price initially indicated that he recognized Mr. Gordon's voice because of earlier conversations between Mr. Gordon and himself. However, he recanted that testimony when he stated that the only way he knew that the voice he heard was that of Mr. Gordon was identification the voice gave on the telephone. Mr. Price failed to show that he had an opinion as to the identity of the caller based upon hearing the voice at any time under circumstances connecting it with the speaker other than the phone call. "[W]hen there is no other evidence to authenticate the identity of the speaker who placed the call except that he states his name, the evidence is inadmissible as hearsay." Santora, McKay & Ranieri v. Franklin, 79 *357 N.C.App. 585, 587, 339 S.E.2d 799, 801 (1986) (citation omitted). Accordingly, this assignment is overruled.

VII
In her seventeenth assignment of error the plaintiff argues that the trial court erred in granting a directed verdict in favor of each defendant on each of the plaintiff's claims for relief.
"On a motion by a defendant for a directed verdict at [the] close of [the] plaintiff's evidence in a jury case, as here, the evidence must be taken as true and considered in the light most favorable to [the] plaintiff." Farmer v. Chaney, 292 N.C. 451, 452-453, 233 S.E.2d 582, 584 (1977). All evidentiary conflicts must be resolved in favor of the non-movant. Daughtry v. Turnage, 295 N.C. 543, 544, 246 S.E.2d 788, 789 (1978). Credibility of testimony is for the jury, not the court, and a genuine question of fact must be tried by a jury unless that right is waived. Price v. Conley, 21 N.C.App. 326, 328-29, 204 S.E.2d 178, 180 (1974). "[T]he motion should be denied if there is any evidence more than a scintilla to support plaintiff's prima facie case in all its constituent elements." Wallace v. Evans, 60 N.C.App. 145, 146, 298 S.E.2d 193, 194 (1982) (citations omitted). However, if a plaintiff fails to present evidence of each element of her claim for relief she will not survive a directed verdict motion. Felts v. Liberty Emergency Serv., 97 N.C.App. 381, 383, 388 S.E.2d 619, 620 (1990).

Criminal Battery
The plaintiff argues that the individual defendants Mr. Barco, Mr. Baucom, Mr. Bellamy, Mr. Ghoulis, and Mr. Mumma violated G.S. 14-33(a) and 14-33(b) and, therefore, the trial court erred in granting the individual defendants a directed verdict. We disagree.
"The same wrongful act may constitute both a crime and a tort." 21 Am.Jur.2d Criminal Law § 2 (1981). However, "no civil right can be predicated upon a mere violation of a criminal statute, ...; the crime is an offense against the public pursued by the sovereign, [and] the tort is a private injury which is pursued by the injured party." 74 Am.Jur.2d Torts § 1 (1974). See e.g. State v. Hines, 36 N.C.App. 33, 42, 243 S.E.2d 782, 787, disc. review denied and appeal dismissed, 295 N.C. 262, 245 S.E.2d 779 (1978) ("The ultimate loss [or damage] to the victim ... is an issue which is irrelevant to the purpose of the criminal statute and is an issue properly within the province of the civil courts."). This argument is without merit.

Civil Assault
Plaintiff also argues that the individual defendants Mr. Barco, Mr. Baucom, Mr. Bellamy, Mr. Ghoulis, and Mr. Mumma committed a civil assault upon her. The plaintiff's brief states "[t]he undersigned will not insult this [C]ourt with an analysis of the law on assault and battery...." This case, by its very essence, is an assault and battery case. "The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." Hawkins v. Hawkins, 101 N.C.App. 529, 533, 400 S.E.2d 472, 475, disc. review allowed, 329 N.C. 496, 407 S.E.2d 533 (1991) (citation omitted). "The gist of an action for assault is apprehension of harmful or offensive contact." Morrow v. Kings Department Stores, Inc., 57 N.C.App. 13, 19, 290 S.E.2d 732, 736, disc. review denied, 306 N.C. 385, 294 S.E.2d 210 (1982). Here, during cross-examination the plaintiff testified as follows:
Q. Not that you remember. Now, while we're on the subject of that, you have no recollection of the happening of any of the things that you've accused the members of Alof Lambda Chi Alpha do you?
A. No.
This testimony is an admission by the plaintiff that she did not have any apprehension of harmful or offensive contact. This assignment is overruled.

Civil Battery
The plaintiff also alleges that the individual defendants Mr. Barco, Mr. Baucom, Mr. Bellamy, Mr. Ghoulis, and Mr. Mumma committed a civil battery upon her. "The elements of battery are intent, harmful *358 or offensive contact, causation, and lack of privilege." Hawkins, 101 N.C.App. at 533, 400 S.E.2d at 475. "The gist of an action for battery is `the absence of consent to ... contact on the part of the plaintiff.'" Morrow, 57 N.C.App. at 19, 290 S.E.2d at 736 (citation omitted). However, a person who is unconscious or insensibly drunk cannot give consent to physical contact. See e.g. State v. Moorman, 320 N.C. 387, 392, 358 S.E.2d 502, 505 (1987); and State v. Aiken, 73 N.C.App. 487, 499, 326 S.E.2d 919, 926, disc. review denied and appeal dismissed, 313 N.C. 604, 332 S.E.2d 180 (1985).
Here, the plaintiff failed to present any evidence that the individual defendants Mr. Barco, Mr. Bellamy, or Mr. Mumma ever made any physical contact with her. The plaintiff has no personal recollection of being touched by any of the men. The men did not admit touching her, and no one testified that any of them touched her. Accordingly, this assignment is overruled.
The plaintiff did, however, present testimony that both Mr. Ghoulis and Mr. Baucom touched her and participated in sexually motivated physical conduct with her. Indeed, during their testimony both men admitted touching the plaintiff. Both men also testified that the plaintiff initiated the touching and that the touching was consensual. The plaintiff, on the other hand, claimed that she was unconscious and that any contact was non-consensual. She testified:
Q. And what's the next thing you remember after getting up to the top of the stairs?
A. I remember that the room was really dark. It was like totally black. I remember I was just lying there or leaning back or something and just shaking my head and saying, "No, no." It was justI couldn't see anything, I just remember just, "No, no."
Q. Okay. After saying that, what's the next thing you remember?
A. I remember coming to again and seeing like just a picture of guys standing in the doorway, just like I came to and saw them and then like I went right back out.
Q. When you say, "came to," what do you mean by that?
A. I was unconscious. I wasI didn't know what was going on. It was just like all the sudden a spot that I can remember, just like I woke up and then went right back to sleep.
Here, the plaintiff presented evidence of each element of civil battery, including conflicting testimony as to whether the plaintiff was conscious and able to give her consent to the admitted contacts by Mr. Ghoulis and Mr. Baucom. The crux of the matter, then, is the determination of whether the plaintiff consented to the contacts. That determination rests solely on the credibility of the witnesses, and is an issue properly presented to the jury, not the court. See Price, 21 N.C.App. at 329, 204 S.E.2d at 180. Accordingly, it was error for the trial court to direct a verdict in favor of the individual defendants Mr. Ghoulis and Mr. Baucom on the civil battery claim, and we remand for a new trial on these claims.

Intentional Infliction of Emotional Distress
The plaintiff next claims that each of the individual defendants (Mr. Baucom, Mr. Bellamy, Mr. Ghoulis, Mr. Gordon, Mr. Medford, and Mr. Mumma) intentionally inflicted emotional distress upon her. She also argues that the individual defendants Mr. Medford and Mr. Gordon intentionally inflicted emotional distress upon her "on behalf of the fraternity."
The tort of intentional infliction of mental or emotional distress was formally recognized in North Carolina by the decisions of our Supreme Court in Stanback v. Stanback, 297 N.C. 181, 254 S.E.2d 611 (1979). The claim exists "when a defendant's `conduct exceeds all bounds usually tolerated by decent society' and the conduct `causes mental distress of a very serious kind.'" Id. at 196, 254 S.E.2d at 622, quoting Prosser, The Law of Torts § 12, p. 56 (4th Ed.1971). The elements of the tort consist of: (1) extreme and outrageous conduct, (2) which *359 is intended to cause and does cause (3) severe emotional distress. Dickens v. Puryear, supra [302 N.C. 437, 276 S.E.2d 325 (1981) ].
The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress. Recovery may be had for the emotional distress so caused and for any other bodily harm which proximately results from the distress itself. Id. at 452-53, 276 S.E.2d at 355.
Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 487-88, 340 S.E.2d 116, 119-20, disc. rev. denied, 317 N.C. 334, 346 S.E.2d 140 (1986). The issue, here, is whether the plaintiff presented sufficient evidence of each element of the tort of intentional infliction of emotional distress to withstand the defendants' directed verdict motions.
The standard for determining whether conduct is extreme or outrageous is well settled in this jurisdiction.
It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery.... However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability.
Brown v. Burlington Industries, Inc., 93 N.C.App. 431, 436, 378 S.E.2d 232, 235 (1989), review dismissed, 326 N.C. 356, 388 S.E.2d 769 (1990) (quoting Hogan v. Forsyth Country Club Co., 79 N.C.App. at 491, 340 S.E.2d at 121).
We first address the claims against the defendants Mr. Ghoulis and Mr. Baucom. The evidence when taken as true and considered in the light most favorable to the plaintiff tends to show the following: that Mr. Ghoulis knew that the plaintiff had been drinking alcoholic beverages and that she "couldn't make a judgement call as to what she wanted to do;" that both Mr. Ghoulis and Mr. Baucom engaged in kissing and heavy petting with the plaintiff in the presence of others; and that the plaintiff was unconscious during physical contact. We do not condone the conduct alleged here. However, the record before us does not show conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan, 79 N.C.App. at 493, 340 S.E.2d at 123 (quoting Restatement of Torts, § 46 comment (d) (1965)). Rather, the record only presents some evidence of a sexual battery, and we are unwilling to hold on this record that a sexual battery, standing alone, constitutes the required extreme and outrageous conduct. This assignment is overruled.
Similarly, the plaintiff claims that Mr. Bellamy, Mr. Gordon, Mr. Medford and Mr. Mumma exhibited extreme and outrageous conduct. However, the plaintiff has failed to present sufficient evidence in the record to show that each exhibited the required extreme and outrageous conduct. This assignment of error is likewise overruled.

Negligence
Finally, the plaintiff argues that the trial court erred in directing a verdict against her on the negligence claims she raised against the Zeta Chapter of Lambda Chi Alpha, Lambda Chi Alpha Fraternity, Inc., and LCA Alumni Properties. We disagree.
Assuming arguendo, but without deciding, that the plaintiff stated valid negligence claims against each of the defendants, we hold that the plaintiff was contributorily negligent as a matter of law.
Contributory negligence is such an act or omission on the part of the plaintiff amounting to a want of ordinary care concurring and cooperating with some negligent act or omission on the part of the defendant as makes the act or omission of the plaintiff a proximate cause or occasion of the injury complained of.
Adams v. Board of Education, 248 N.C. 506, 511, 103 S.E.2d 854, 857 (1958). Here, the plaintiff admitted that she voluntarily *360 consumed half a bottle of champagne, at least five or six beers, and a shot of Southern Comfort liquor. In her own words, she became "extremely intoxicated" and at some point passed into a state of unconsciousness. "Plaintiff's act of consuming sufficient quantities of intoxicants to [cause her to become unconscious] amounts to `a want of ordinary care' which proximately caused [any injury she suffered and constitutes] contributory negligence as a matter of law." Brower v. Robert Chappell & Assocs., Inc., 74 N.C.App. 317, 320, 328 S.E.2d 45, 47, disc. review denied, 314 N.C. 537, 335 S.E.2d 313 (1985).
However, during oral argument the plaintiff argued that even if she was contributorily negligent as a matter of law, the defendants' actions amounted to wilful and wanton negligence and therefore survive the plaintiff's contributory negligence. It is well established that a party's contributory negligence will not preclude recovery for injuries proximately caused by other's willful and wanton negligence. Fry v. Southern Public Utilities Co., 183 N.C. 281, 314, 111 S.E. 354, 361 (1922). "`Wilful and wanton' negligence is conduct which shows either a deliberate intention to harm, or an utter indifference to, or conscious disregard for, the rights or safety of others." Siders v. Gibbs, 31 N.C.App. 481, 485, 229 S.E.2d 811, 814 (1976).
Here, the plaintiff has failed to present sufficient evidence to support a claim of willful or wanton negligence. Rather, at best, the plaintiff has only shown that the defendants may have been inattentive or inadvertent to the fact that alcohol was being served to minors at the Lambda Chi Alpha fraternity house. Evidence of mere inadvertence will not preclude the defense of contributory negligence. See e.g. Blevins v. France, 244 N.C. 334, 341-43, 93 S.E.2d 549, 554-56 (1956) (evidence that stock car race officials started a race inadvertent to the fact that intestate's car was stalled on the track was insufficient to establish willful or wanton negligence so as to preclude the defense of contributory negligence). This assignment is overruled.

Remaining claims
The plaintiff has abandoned any remaining claims for which the trial court directed a verdict in favor of the defendants by failure to offer reason, argument, or authority in her brief. N.C.R.App.P. 28(b)(5).

VIII
In conclusion, we hold that the trial court correctly entered directed verdict on each cause of action except the civil battery actions against Mr. Ghoulis and Mr. Baucom. Accordingly, we reverse the trial court's entry of directed verdict against the plaintiff on those two claims and remand for a new trial.
Affirmed in part; reversed and remanded in part.
JOHNSON and ORR, JJ., concur.