## STATE v. JOSEPH J. WILLIAMS.

*Evidence—Criminal Practice—Witness, impeachment of—Privileged Communication—Right of counsel to see document handed to witness.*

1. The practice of directing witnesses for the prosecution to be taken to the office of prisoner's counsel and there examined by them as to what their testimony will be on the trial, with a view of aiding in the preparation of the defence, is disapproved, and the power of the court to allow it, questioned.

2. The judge may perhaps allow counsel to converse with such witnesses in presence of some one representing the interest of the prosecution.

3. Where a witness for the prosecution (here an accomplice) was sent by permission of the court and solicitor, at the request of the prisoner, to the office of prisoner's counsel and was there examined by them with a view to preparing his defence, *it was held* to be competent on the trial of the prisoner to prove by one of the counsel the statements made by the witness, for the purpose of impeaching his testimoney on the trial—the value of such testimony under the attending circumstances being a question for the jury.

4. The facts here do not interfere with the operation of the rule of evidence which permits proof of declarations of a witness in conflict with his testimony at the trial, bearing directly upon the question at issue, with a view of discrediting the witness.

5. Nor can the impeaching evidence be excluded on the ground that the statements of the witness are in nature of privileged communications.

6. Where counsel puts a paper in the hands of a witness and asks him whether it is in his hand-writing and then proceeds to found a question on such paper, the opposing counsel has a right to see it.

(*Edwards* v. *Sullivan,* 8 Ired., 302; *Hooper* v. *Moore,* 3 Jones, 428; *State* v. *Wright,* 75 N. C., 439; *State* v. *Patterson,* 2 Ired., 346; *State* v. *McQueen,* 1 Jones, 177; *Jones* v. *Jones,* 80 N. C., 246, cited and approved.)

INDICTMENT for murder, tried at June Term, 1884, of WAKE Superior Court, before *Avery, J.*

Verdict of guilty ; judgment ; appeal by prisoner.

*Attorney-General* and *T. M. Argo,* for the State.

*Messrs. D. G. Fowle, Armistead Jones, E. C. Smith, T. P. Devereux, Bledsoe* and *Fuller & Snow,* for prisoner.

SMITH, C. J.   The prisoner is charged with the murder of William J. Watkins, and upon the trial before a jury was convicted of the crime.   Many exceptions were taken to the rulings of the court by his counsel, in which it is necessary, in disposing of the appeal, to notice but two, numbered respectively 1 and 14, and resting substantially upon the same basis.

The principal witness, relied on mainly by the state to prove the homicide, and alleged to have been an accomplice in committing the crime, one John Pool, upon his direct examination, testified that on the evening of the day when the said William J. Watkins was killed, he, the witness, rode in a buggy with the prisoner from Rogers' Cross Roads to where the latter lived, to Rolesville, and heard him say, " God damned if somebody won't come up missing in the morning."

On the cross-examination he was asked by one of the seven counsel employed in the defence, if he did not say, when examined by them with permission of the court on a former occasion, in the office of one of them, touching his knowledge of the homicide, and the prisoner's connection with it, that the prisoner made no threats during that ride, and added : " I am certain of it ; write that down."

The witness replied that " he did tell counsel that he did not recollect the prisoner's saying anything about anybody, but that he had since recollected it."

The counsel repeated and pressed the inquiry, and was

reading from notes taken of his statement when, upon the interposing of an objection from the state, the counsel stated their purpose to be to contradict the witness by proving what the witness did say by one of their number, who was present and heard what was said.

The judge held " that the witness was allowed to be examined by prisoner's counsel, by order of the court and with consent of the solicitor, for the purpose of finding out what the state proposed to prove, and meeting it with other evidence, but that the privilege had been considered by the court as granted always upon the tacit understanding that the witness was not to be contradicted or impeached by declarations made to opposing counsel without the presence and protection of the state counsel and of the court.

Before any objection came from the solicitor, the judge remarked to prisoner's counsel, "Is it your purpose, gentlemen, to contradict the witness by counsel? Is that proper?" To which counsel replied, "It is not objected to," and avowed their intent to contradict witness by testimony of prisoner's counsel.

The state then objected, and the objection being sustained and the inquiry directed to such end ruled out, the prisoner excepted to the ruling and also to the remarks of the judge.

It is obvious that the practice of directing witnesses, summoned for the prosecution, to be taken to the office of counsel employed in defending the prisoner and there subjected to a rigid examination as to what their testimony will be, with a view of aiding in the preparation of the defence, is liable to dangerous abuse; and the use proposed to be made of the information thus acquired, in breaking down the witness and destroying his credibility, naturally suggested the remark made by the judge who had made the order to give the prisoner full information of the proof the state would introduce, and led to the exclusion of this method of impeaching the witness.

It is competent for the prisoner or his counsel to converse with any one supposed to have knowledge of the offence imputed and ascertain the facts so known.

A party, even when the state is such, cannot by first summoning a witness deprive the other party, or the accused, of the testimony of the witness when favorable, nor of an opportunity of ascertaining what information he may possess, before putting him on the stand, as he might do should the state decline to introduce and examine him. This information ought to be sought and obtained voluntarily and fairly from the witness, and not by what he may deem to be a constraint. It would not be unnatural, under the circumstances of this examination, for him to feel a constraint, though none in fact may have been exercised over him. It is questionable whether the judge should have made any order for the witness' removal to the office of counsel, or to have done more than give permission for counsel to see and converse with the witness; and perhaps this in presence of some one representing the interests of the state, or at least of other indifferent persons who could also, if necessary, testify to what occurred at the interview.

His Honor seems to have felt as if he was called upon to prevent the effort to break down the witness by the means of conferring with the witness, which he, in order to a fair trial, had allowed to the prisoner's counsel.

But we know of no rule by which this testimony can be withdrawn from the operation of the well settled principle in the law of evidence, which permits proof of declarations in conflict with testimony delivered at the trial, and bearing directly upon the prisoner's guilt, with the view of discrediting the witness before the jury. *Edwards* v. *Sullivan*, 8 Ired., 302; *Hooper* v. *Moore*, 3 Jones, 428; *State* v. *Wright*, 75 N. C., 439.

The testimony proposed to be elicited from the witness of the alleged repugnancy, or from associate counsel, if de-

nied, was important as showing a premeditated purpose in the prisoner, and upon proof shortly afterwards of his committing the homicide, of the grade of the crime.

The circumstances, which we have mentioned, as calculated to impair the force of proof of the repugnance, will of course be before the jury and enable them to properly estimate the value of the impeaching evidence.

We have in vain searched, as counsel have done without success, for some adjudication in which the admissibility of statements, made by a witness for the state upon a permitted examination before counsel who appear for the defence, proposed to be proved by such counsel for the purpose of discrediting him, has been passed on or considered.

We see no reason for the exclusion of the declarations as partaking of the nature of a professional and protected communication subsisting for the time being, their relations being wholly adversary and so understood by each, nor upon the assumption of their being involuntary and coerced declarations, for there is no evidence of such supposed constraint; and, if there were such evidence, would not constitute sufficient reason for withholding them from the jury. Such declarations from a witness do not stand upon the same footing as confessions of one on trial for crime, superinduced by fear or hope, as we have held at this term in the case of *State* v. *Mills, ante* 581.

Nor is the evidence of the contradictory representations to be rejected because proceeding from the counsel to whom they were made. There is no principle of law known to us which exempts this testimony from the operation of the general rule that permits conflicting statements as to a material fact, previously made, to be extracted from the witness himself or from others who heard them.

It is urged in the argument for the state that the witness having answered affirmatively to the question and admitted the words imputed to him, the prisoner is precluded from

pressing the inquiry further and interrogating others who were present as to their recollection of what was said. The witness, however, does not admit his having used the words embodied in the question in form or in substance, but seeks to excuse himself for not speaking of the utterance of the threat because it had escaped his memory at the time, and had since been recalled to his recollection. But the inquiry is, did you not say that *no threats were made* by the prisoner while in the buggy ? "I am certain of it, write that down," an emphatic denial not met by the answer that he did not then, as he did afterwards, remember them. This is far from an affirmative response to the question.

But if the response had been full and direct, admitting the very words contained in the inquiry, it would not prevent proof from others present of their utterance ; nor indeed was it necessary first to interrogate the witness about his statements, inasmuch as the evidence was material and tended directly to show the character of the homicide as affected by express malice. It is settled where the impeached testimony has a direct bearing upon the issue, in this case in support of the criminal act charged, the repugnant statement may be shown by another without first interrogating the impeached witness. The rule is clearly defined and we find it unnecessary to do more than refer to the cases in which it is declared. *State* v. *Patterson,* 2 Ired., 346; *State* v. *McQueen,* 1 Jones, 177 ; *Jones* v. *Jones,* 80 N. C., 246; *State* v. *Mills, ante* 581.

We refer to another point made at the trial, not with the view of passing upon the sufficiency of the exception to the ruling, to-wit : under what circumstances the opposing counsel are entitled to examine a paper offered to a witness who is under examination, for the purpose of identification for future use on the trial, should its introduction be deemed material.

The rule is thus laid down by LORD DENMAN in *Regina* v. *Duncomb,* 2 C. and P. 369 :

"If a paper," he remarks, "is put into a witness' hands and it leads to anything, that is, if anything comes of the question founded on it, the opposite counsel has the right to see the paper and re-examine upon it; but if the thing misses entirely and nothing comes of it, the opposite counsel has no right to look into it."

So says Mr. Justice EARLE, in *Cope* v. *Dock Co.*, Q. C. & K., 757: "Whenever counsel puts a document in the hands of a witness and asks him whether it is in his handwriting, and then proceeds to found any question on such document, the counsel on the opposite side has a right to see it. In my opinion the only cases in which the opposite counsel has not this right, is where counsel after handing the document to the witness goes no further."

It is not necessary to consider the various other exceptions made during the progress of the trial, nor even that by reference to the testimony of the witness Peebles, which is virtually disposed of in what has been before said.

Nor do we mean to impute misconduct to the prisoner's counsel in what transpired upon their examination of the witness Pool. There are cases, and this may be of the number, where duty to their client demands an exposure of the conflicting statements of a witness in order that the jury may put a proper estimate upon his oath on the trial; more especially does this duty become imperative when the prisoner's life may be suspended upon the evidence given.

It is our duty to enforce and maintain inviolate the rules of law, settled by its most learned and eminent ministers, and as the prisoner has been deprived of material and important evidence, whose influence on the minds of the jury in guiding them to their verdict we cannot undertake to fathom, he is in law entitled to and must be accorded another trial. There is error, and a *venire de novo* must be awarded. This will be certified.

Error.                                   *Venire de novo.*