STATE OF NORTH CAROLINA v. DARRYL F. YOUNGER

No. 132A82

(Filed 5 October 1982)

**1. Rape and Allied Offenses § 4.3— purpose of rape victim shield statute**

The rape victim shield statute, G.S. 8-58.6, was designed to protect the witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual conduct which has little relevance to the case and has a low probative value, but the statute was not designed to shield the prosecuting witness from her own actions which have a direct bearing on the alleged sexual offense.

**2. Criminal Law § 89.4; Rape and Allied Offenses § 4.3— rape victim shield statute—prior inconsistent statement showing sexual activity**

In a prosecution for rape and burglary wherein the prosecutrix testified in the district court that she had sex on the night of the alleged rape with the defendant's roommate, the rape victim shield statute did not prohibit the defendant from impeaching the credibility of the prosecutrix by cross-examining her about a prior inconsistent statement she had made to the examining physician only hours after the alleged rape that she was sexually active with a boyfriend and last had sex one month prior to the alleged crimes. Rather, the prior statement had a strong probative value since it related directly to her account of the incident and those events leading up to it and should have been admitted by the trial court.

**3. Rape and Allied Offenses § 4.3— prior inconsistent statement showing sexual activity—determination of admissibility—hearing by trial court**

In determining whether a prior inconsistent statement by an alleged rape victim showing previous sexual activity has enough probative value to negate its prejudicial effect, the trial court should follow a procedure similar to the one set out in G.S. 8-58.6(c), including an in-camera hearing in which the court can hear and evaluate the arguments of counsel before making a ruling.

**4. Rape and Allied Offenses § 4.3— victim's sexual activity after rape—inadmissibility as distinct pattern of similar behavior**

    The trial court did not err in ruling that an alleged rape victim's sexual activity with defendant's roommate one week after the date of the alleged rape did not constitute evidence of a distinct pattern of behavior similar to defendant's version of the incident so as to be admissible under G.S. 8-58.6(b)(3).

DEFENDANT appeals as a matter of right from judgment of *Albright, J.,* entered on October 23, 1981, Session of Superior Court, SURRY County, imposing two terms of life imprisonment on defendant, the sentences to run concurrently. Defendant was charged in indictments, proper in form, with first degree burglary and first degree rape.

The evidence disclosed that the defendant, Darryl F. Younger, was arrested on 17 February 1981, and charged with the offenses indicated on the same date.

The State's evidence tended to show that on 17 February 1981 the defendant, Darryl F. Younger, unlawfully broke into and entered an apartment rented at that time by one Sarah Lonne Davis located at Surry Villa Apartments in Dobson, North Carolina. According to the prosecuting witness, the defendant forced open her door, after she had partially opened it, and entered the premises without her permission and against her will. After entering the premises, according to the prosecuting witness, the defendant had sexual intercourse with her against her will. When defendant entered the apartment he had in his hand a pistol, which he later displayed and threatened to use. The alleged breaking and entering and rape occurred about 3:00 a.m. About 5:30 a.m. on the same day, defendant was arrested by the Dobson Police Department and the Surry County Sheriff's Department and charged with the criminal offense of first degree burglary and first degree rape. The evidence disclosed that the witness went to the Dobson Police Department about 4:00 a.m. on the same day and made a full report of the alleged burglary and rape. The prosecuting witness was then taken by the Police Department to Northern Hospital of Surry County, and examined by a physician.

The defendant's evidence tended to show in testimony by the defendant himself that he knew the prosecuting witness and had

been in her apartment on previous occasions, and that on this morning the prosecuting witness let him in her apartment and consented to having sexual relations with him.

The case was submitted to the jury with the permissible options of returning a verdict of first degree burglary and first degree rape, second degree rape, or not guilty. The jury in turn found the defendant guilty of first degree burglary and first degree rape.

There was evidence that the defendant and his former roommate, Glenn Gravely, lived in the same apartment complex as the victim. The evidence with regard to Gravely indicated that for several weeks prior to the alleged rape and burglary, he had been regularly going to the apartment of the victim at late hours and having intercourse with her. There was in-camera testimony on direct examination of Glenn Gravely that he had intercourse with Sarah Lonne Davis in her apartment one week *after* the alleged rape.

The medical testimony of Dr. Beyer, who examined the victim at the hospital later on the morning of 17 February 1981, disclosed that among other things, the victim's physical condition was consistent with having had intercourse on the night of the alleged rape. Judge Albright entered an order denying the defendant the right to cross-examine the prosecuting witness about certain statements made by her to the examining physician.

Additional facts pertinent to the decision will be related in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorneys General Douglas A. Johnston and George W. Lennon, for the State.*

*Stephen G. Royster and Michael F. Royster, for the defendant.*

COPELAND, Justice.

Defendant argues and maintains that Judge Albright erred when he entered an order denying defendant the right to cross-examine the prosecuting witness about certain statements made by her to the examining physician, to-wit, that she was sexually

active with a boyfriend and last had sex one month prior to the alleged burglary and rape. The defendant contends that in light of the prosecuting witness's testimony at district court that she had sex on the night of the alleged rape with the defendant's roommate, he should be allowed to challenge her credibility based on these two inconsistent statements. In response to this contention, the State argues in substance that the evidence of the statements about sexual activity with her boyfriend one month before the alleged rape is not probative of any element of the offense in question, but at best, goes merely to the weight of the evidence.

The order of Judge Albright that forbade the cross-examination of the prosecuting witness concerning what she had told Dr. Beyer was entered in connection with an in-camera hearing wherein the court also ruled that the defendant could not ask the witness, Dr. Beyer, anything relating to the statement made by the prosecutrix to the doctor on the morning of his examination. Judge Albright ruled that the defendant's question amounted to nothing less than evidence of sexual behavior on the part of the prosecuting witness, making it irrelevant to any issue in this case. Judge Albright was of the opinion that G.S. 8-58.6, commonly referred to as the rape shield statute, controlled his determination and since the request did not fall under one of the four categories set out in G.S. 8-58.6(b) it must be irrelevant. We believe Judge Albright misconstrued the scope of G.S. 8-58.6(b).

"G.S. 8-58.6 is nothing more than a codification of this jurisdiction's *rule of relevance* as that rule specifically applies to the past sexual behavior of rape victims." *State v. Fortney,* 301 N.C. 31, 37, 269 S.E. 2d 110, 113 (1980). (Emphasis added.) Prior to the enactment of G.S. 8-58.6, the prosecuting witness's general reputation for unchastity was admissible during a rape trial for the purpose of attacking her credibility and showing her proneness to consent to sexual acts. *Fortney, Id., State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978). Such a rule was based on antiquated ideas of what evidence was probative to a woman's willingness to consent to sexual relations. When the courts applied these antiquated ideas to the necessarily elastic rules of relevance, prior sexual behavior of little or no probative value, was often admitted into evidence. Today, "[c]ommon sense and sociological surveys make clear that prior sexual experience by a woman with one man does not render her more likely to consent

to intercourse with an often armed and frequently strange attacker." *Fortney*, 301 N.C. at 38, 269 S.E. 2d at 114. In *Fortney*, this Court recognized that G.S. 8-58.6 cast aside the idea, "that *any* previous sexual behavior of a rape victim is *per se* relevant to a rape proceeding." *Fortney*, 301 N.C. at 38, 269 S.E. 2d at 113. (Original emphasis.) In order to avoid prejudice and insure that the effects of such antiquated beliefs would not linger, our Legislature passed G.S. 8-58.6 which set out in clear language four categories in which evidence of the sexual behavior of the prosecutrix may be brought out at trial.

Each category is directed at those instances where specific prior sexual behavior of the prosecutrix is clearly relevant to the alleged sexual offense at trial. First, G.S. 8-58.6(b)(1) allows the introduction of previous sexual behavior between the complainant and the defendant. Second, G.S. 8-58.6(b)(2) allows specific instances of sexual behavior to be brought into evidence in order to show that the defendant did not commit the alleged act. Third, G.S. 8-58.6(b)(3) permits introducing evidence of sexual acts which establish a distinctive pattern of behavior that tends to show the prosecutrix either consented to the act or behaved in a manner that led the defendant to believe she consented. And fourth, under G.S. 8-58.6(b)(4) evidence of sexual behavior may be offered as the basis of expert psychological opinion that the complainant fantasized or invented the acts charged.

[1] In each of these four categories it is not hard to see that the relevance and the probative value of such behavior far outweigh any prejudice such conduct might arouse in the minds of the jury. This statute was designed to protect the witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual conduct which has little relevance to the case and has a low probative value. However, as each of the four categories under G.S. 8-58.6(b) so vividly illustrates, the statute was not designed to shield the prosecuting witness from her own actions which have a direct bearing on the alleged sexual offense.

[2] Unlike some distant sexual encounter which has no relevance to this case other than showing the witness is sexually active, the prior inconsistent statement made by this prosecuting witness has a direct relation to the events surrounding this alleged rape.

We have repeatedly held that prior inconsistent statements made by a prosecuting witness may be used to impeach his or her testimony when such statements bear directly on issues in the case. *State v. Williams*, 91 N.C. 599 (1884); *State v. Cope*, 240 N.C. 244, 81 S.E. 2d 773 (1954). It is our belief that the statute was not designed to shield the prosecutrix from the effects of her own inconsistent statements which cast a grave doubt on the credibility of her story. It must be remembered that G.S. 8-58.6(b) "define(s) those times when the prior sexual behavior of a complainant is relevant to issues raised in a rape trial and (is) *not a revolutionary move to exclude evidence generally considered relevant in trials of other crimes.*" *Fortney*, 301 N.C. at 42, 269 S.E. 2d at 116. (Emphases added.) In other words, the statute was not intended to act as a barricade against evidence which is used to prove issues common to all trials. Inconsistent statements are, without a doubt, an issue common to all trials.

In this case, as in most sex offense cases, the prosecuting witness' testimony is crucial to the State's evidence and her credibility as a witness can easily determine the outcome at trial. Therefore, the prosecutrix's prior statement to the examining physician, only hours after the alleged rape, which was inconsistent with her testimony at District Court, has a strong probative value, especially since it relates directly to her account of the incident and those events leading up to it.

[3] Of course, the relevance and probative value of such an inconsistent statement must be weighed against its prejudicial effect. Since such evidence produces a high prejudicial impact upon the jury, the trial court should follow a procedure similar to the one set out in G.S. 8-58.6(c) for determining if the evidence has enough probative value to negate its prejudicial effect. Such a procedure would entail an *in-camera* hearing in which the court can hear and evaluate the arguments of counsel before making a ruling.

As we stated in *Fortney*, G.S. 8-58.6 is only a codification of the "rule of relevance" as it pertains to issues in a rape case. Therefore the statute does not transcend the bounds of relevance but only clarifies its use. *Fortney, supra,* does not stand for the proposition that since prior sexual conduct is highly prejudicial it can never be referred to unless it falls within the guidelines of

G.S. 8-58.6(b). If such were true the tail would truly be wagging the dog. Instead, this statute stands for the realization that prior sexual conduct by a witness, absent some factor which ties it to the specific act which is the subject of the trial, is irrelevant due to its low probative value and high prejudicial effect.

The able trial judge misconstrued the scope of G.S. 8-58.6 in treating it as the sole gauge for determining whether evidence is admissible in rape cases. Impeachment by prior inconsistent statements is a practice invoked in all types of trials against all types of witnesses. This was not an attempt by the defendant to impeach the credibility of the witness by revealing acts of prior sexual conduct, rather it challenges her credibility through her own prior inconsistent statements. The fact that this question includes a reference to previous sexual behavior does not prevent its admission into evidence, instead the sexual conduct reference goes to the degree of prejudice which must be balanced against the question's probative value.

In light of the extreme importance of an eyewitness's credibility, we feel that the denial of an opportunity to impeach the prosecuting witness with prior inconsistent statements was highly prejudicial to defendant's case. Therefore, we must conclude that defendant is entitled to a new trial.

[4] In addition, defendant argues that he should have been permitted to cross-examine the prosecuting witness about her sexual activity with Glenn Gravely one week after the date of the alleged rape. The defendant relies on G.S. 8-58.6(b)(3) which states:

> The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged, or behaved in such a manner as to lead the defendant to reasonably believe that complainant consented.

Judge Albright, in an in-camera hearing order, stated that the defendant could only cross-examine the prosecutrix concerning consensual sexual acts with Glenn Gravely at her apartment, late at night which took place on or before the night in question.

The trial court found that the sexual relations between the prosecuting witness and Gravely which occurred before the rape were evidence of a distinct pattern of behavior within the meaning of G.S. 8-58.6(b)(3) but the sole act after the rape was not within the meaning of subsection (b)(3).

In our opinion, the trial judge has been more than liberal in his interpretation of what is a *distinctive* pattern of behavior and there were clearly enough facts for him to determine that the post rape sexual encounter was not evidence of a distinct pattern of behavior similar to the defendant's version of the incident. Therefore, the provisions of G.S. 8-58.6(b)(3) do not give the defendant any comfort.

The other assignments of error will probably not recur on retrial and we do not discuss them.

For the reasons stated, a new trial is ordered for the defendant.

New trial.