**IN RE K.W.**

[192 N.C. App. 646 (2008)]

IN THE MATTER OF: K.W.

No. COA08-535

(Filed 16 September 2008)

**1. Evidence— prior sexual activity—civil case—excluded**

It is permissible in a civil case to exclude a respondent's prior sexual history based N.C.G.S. § 8C-1, Rule 412. Evidence of the prior sexual history of a victim (here a child) is irrelevant in most instances; however, upon finding that evidence falls under an exception to Rule 412 or is outside the rule, a balancing of probative value versus prejudicial effect should be used in the court's discretion.

**2. Evidence— prior sexual activity—false accusation—police report**

False accusations do not fall under N.C.G.S. § 8C-1, Rule 412 and are admissible if relevant, but a police report of a prior sexual assault here was not the equivalent of a false accusation that could be used to impeach, and was properly excluded.

**3. Evidence— child sexual abuse—Myspace page—impeachment**

A Myspace page was admissible as impeachment as to prior sexual history in a child abuse and neglect proceeding because Rule 412 does not apply to inconsistent statements. Its exclusion here was not prejudicial because no persuasive argument for a different outcome was presented.

**4. Child Abuse and Neglect— findings—supported by evidence**

Findings of sexual abuse in a child neglect and abuse proceeding were supported by clear and convincing evidence.

**5. Child Abuse and Neglect— conclusions—sexual activity as discipline—supported by evidence**

In a child abuse and neglect proceeding, conclusions of law about the use of forced sexual activity as discipline were supported by clear and convincing evidence.

**6. Child Abuse and Neglect— sexual abuse—supported by testimony of victim and physician**

Conclusions that a child was abused were supported by clear and convincing evidence in testimony from the victim and findings from her physician. The medical evidence was presented as

a report of clinical findings rather than an endorsement of the victim's testimony.

**7. Child Abuse and Neglect— sexual abuse—conclusion of neglect and dependency**

The trial court properly concluded that a child was neglected because she was raped by her father and dependent because her parents refused to adhere to a Youth and Family Services safety plan.

Appeal by respondent-father from an order entered 20 December 2007 by Judge Hugh B. Lewis in Mecklenburg County District Court. Heard in the Court of Appeals 25 August 2008.

*Mecklenburg County Attorney's Office, by Tyrone C. Wade, for petitioner-appellee Mecklenburg County Youth and Family Services.*

*Brannon Burroughs for appellee Guardian ad Litem.*

*Christian Hoel for respondent-appellee mother.*

*Rebekah W. Davis for respondent-appellant.*

HUNTER, Judge.

Respondent-father ("respondent") appeals from the order adjudicating his minor child abused, neglected, and dependent. After careful review, we affirm.

K.W., a thirteen-year-old minor, notified her school counselor on 27 September 2006 that she was being raped by her father, A.W. The counselor called the police, and K.W. provided a statement in which she accused her father of raping her multiple times since 20 September 2005. K.W. stated that she was unsure whether her mother was aware of the rape. Mecklenburg County Youth and Family Services ("YFS") became involved with this case on 27 September 2006. On that same date, A.W. signed a Safety Assessment Plan whereby he agreed to cease all contact with his daughter. K.W. testified that her father moved back into the family home approximately one week after the rape allegation, which was a violation of the Safety Assessment Plan. On 3 October 2006, K.W. was examined by a physician who later testified that K.W.'s physical condition was consistent with child sexual abuse. YFS filed a Juvenile Petition on 14 December 2006 alleging K.W. to be an abused, neglected, and dependent juvenile

IN RE K.W.

[192 N.C. App. 646 (2008)]

and obtained an immediate Non-Secure Custody Order. After a hearing, the trial court entered an Adjudicatory and Disposition Hearing Order, adjudicating K.W. abused, neglected, and dependent on 20 December 2007. Respondent appealed the trial court's adjudication.

I.

[1] Respondent first argues that the trial court erred in refusing to admit into evidence a Concord police report and portions of K.W.'s Myspace website. Respondent intended to introduce this evidence to impeach K.W.'s credibility. The trial court excluded the evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 412 (2007). To determine if the evidence was properly excluded, we must first ascertain the applicability of Rule 412 in a civil hearing.

On its face, Rule 412 applies only to criminal trials where a defendant is charged with rape, a sex offense, or a lesser included offense of rape or a sex offense. The rule is one of relevancy and it holds that:

> (b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
>
> (1) Was between the complainant and the defendant; or
>
> (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or
>
> (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or
>
> (4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

N.C. Gen. Stat. § 8C-1, Rule 412(b).

The purpose of Rule 412 is " 'to protect the witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual con-

duct which has little relevance to the case and has a low probative value.'" *State v. Ginyard*, 122 N.C. App. 25, 31, 468 S.E.2d 525, 529 (1996) (quoting *State v. Younger*, 306 N.C. 692, 696, 295 S.E.2d 453, 456 (1982)).

While this rule was promulgated for use in criminal prosecution trials, this Court has found the rule to be applicable in civil cases. *Wilson v. Bellamy*, 105 N.C. App. 446, 414 S.E.2d 347 (1992). In *Bellamy*, the plaintiff was suing members of a fraternity for raping her at a party. *Id.* at 450, 414 S.E.2d at 349. By applying Rule 412 this Court found in *Bellamy* that the trial court erred in requiring the plaintiff to answer defense questions regarding her prior sexual activity and questions pertaining to her intoxicated condition after the party where she was allegedly raped. *Id.* at 460, 414 S.E.2d at 355. In justifying its reliance on Rule 412, this Court stated:

> We also note that our research reveals that, to date, Rule 412 has only been applied in criminal cases. However, the logic applied behind the law . . . is of similar import in the civil arena. Nothing elicited by the defense through the objected to questions above would tend to indicate that the plaintiff gave her consent to the acts allegedly performed by the individual defendants.

*Id.*

Therefore, we find that it is permissible for a trial judge in a civil case to use Rule 412 as a basis for excluding irrelevant evidence about a plaintiff's prior sexual behavior. Pursuant to Rule 412, evidence of the prior sexual history of the victim is irrelevant in most instances. However, upon a finding by the trial court that certain evidence is relevant because it falls into one of the exceptions under Rule 412, or if the evidence falls outside of the rule, a Rule 403 balancing of probative value versus unfair prejudice should be utilized in the court's discretion. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

[2] We would first like to address the admissibility of the Concord police report. The report is dated 23 February 2001 and was filed by K.W.'s mother. K.W. was eight at the time. The incident is listed as a sexual assault, but there is no further description. In the narrative portion, the officer states that there is doubt as to whether the victim, K.W., is telling the truth, but there is no indication as to who possessed the doubt or why. The report lists the case status as "[f]urther [i]nvestigation," but the supplemental investigation report lists the status as "[i]nactive."

At the in-camera hearing to determine admissibility of this report, respondent's attorney informed the judge that K.W. alleged she was raped while the attorney for YFS said that K.W. claimed that a boy inappropriately touched her on the school bus. In making his determination, the judge relied on YSF's explanation of the alleged assault. K.W. did not testify at the in-camera hearing as the judge did not want K.W. to feel intimidated; therefore, the record does not contain her version of the incident cited in the police report.

At the adjudication hearing, respondent sought to introduce the report as a false accusation used to impeach, and on appeal he argues that it should have been admitted as such. Respondent is correct in asserting that a false accusation is not excluded under Rule 412. This Court has held that the "rape shield statute . . . is only concerned with the *sexual activity* of the complainant. Accordingly, the rule only excludes evidence of the actual sexual history of the complainant; it does not apply to false accusations, or to language or conversations whose topic might be sexual behavior[.]" *State v. Thompson*, 139 N.C. App. 299, 309, 533 S.E.2d 834, 841 (2000) (citations omitted). Therefore, false accusations do not fall under the ambit of Rule 412 and are admissible if relevant.

We find that the police report is not equivalent to a false accusation by complainant. The fact that the report mentions some doubt by an unnamed party as to the truthfulness of the allegation, and the fact that no one was charged with an offense does not mean that K.W. made a false accusation. Seeing as there is no evidence other than the police report itself, we cannot say that the report qualifies as a false accusation.

In sum, we agree with respondent that the report is not evidence of prior sexual history. However, since we have determined that it is not a false accusation that could be used to impeach, the report has no probative value. A claim made by K.W., in an unrelated matter, approximately five years prior to the rape allegations against her father does not bear on any material issue in the case. We find that the police report was properly excluded by the trial court.

[3] Next, we will address the admissibility of the Myspace website. The record shows that YFS objected under Rule 412 when respondent attempted to introduce the Myspace page. Respondent argues that Rule 412 does not apply to impeachment via use of an inconsistent statement. We agree and find that the Myspace page was admis-

sible as impeachment evidence, but conclude that the exclusion was harmless error.

In her statement to police and in her hearing testimony, K.W. claimed she was a virgin prior to the rape. She also asserted at the hearing that during the time her father was raping her, she did not have any boyfriends with whom she was intimate nor had she ever been on a date.

The Myspace page contains suggestive photos of K.W. to which she captions, " '[I] may not be a virgin but I still gotta innocent face.' " Also, she answers in the affirmative to the question " 'had sex?' " During the in-camera questioning, K.W. testified that the website was hers, but that her friend filled in the answers. Based on the record, the content of the Myspace page is inconsistent with K.W.'s hearing testimony and statement to police.

Our Supreme Court stated in *State v. Younger*, 306 N.C. 692, 295 S.E.2d 453, "[w]e have repeatedly held that prior inconsistent statements made by a prosecuting witness may be used to impeach his or her testimony when such statements bear directly on issues in the case." *Id.* at 697, 295 S.E.2d at 456 (defense counsel was entitled to impeach a rape victim because a statement she made to her examining physician concerning her prior sexual activity was inconsistent with her trial testimony). K.W.'s inconsistent statements bear directly on the case as her veracity is at issue. She is the only person with direct knowledge of the alleged rape.

Respondent asserts that the Myspace page serves as evidence that someone else could have caused the hymeneal transection found by the examining physician, which supported the physician's conclusion that K.W. had been forcibly penetrated. We do not agree. We find that the Myspace page serves as impeachment evidence, but not as substantive evidence that someone else caused the trauma. Admitting the evidence for that purpose would place it under the purview of Rule 412, and there is no evidence in the Myspace page of *specific instances* of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by respondent.

Despite the fact that Rule 412 does not apply to inconsistent statements and therefore the Myspace page should have been admitted for impeachment purposes, we find that the error was harmless as respondent has not offered a persuasive argument that the outcome of the hearing would have been different had the website been admit-

ted. A general statement by K.W. that she is sexually active does not negate the physician's findings that the trauma she observed in K.W.'s exam "is more likely to be seen in young children who are penetrated pre-puberty and is more likely to be seen where there is forced penetration." Statements that may or may not have been written by K.W. regarding general sexual behavior may have impacted her veracity, but it would not have changed the outcome of the case. Therefore, the error in failing to admit the Myspace page was harmless.

II.

[4] Respondent next assigns as error the trial court's findings of fact eight through twelve and fifteen as they are not supported by clear and convincing evidence. These findings are as follows:

8. K.W.'s father regularly punished K.W. and her brother C.B. by whipping them on their buttocks with a belt. K.W.'s father would have her strip naked prior to, whipping her with the belt. On or about September 20, 2005, [A.W.] was about to punish K.W. and had her remove all of her clothing. Instead of whipping her, he had sexual intercourse with her. A.W. kept promising K.W. that that [sic] particular incident would be the last time he would have sex with her and it would not happen again.

9. A.W. continued to forcibly have sexual intercourse with K.W. intermittently, between 7-15 times over the course of the year. On one occasion, he utilized a vibrator to "get her wet."

10. K.W. was twelve years of age at the time of the first sexual assault. She had never had sexual relations with any other individual. A.W. kept pornographic materials in a suitcase under his bed. C.B. was punished on one occasion for removing pornographic materials from the suitcase. K.W. assumed that is where her father kept the vibrator that he utilized on her.

11. K.W. told her brother, C.B., of her father's sexual assault, but he did not initially believe her. K.W. described one occasion where her father sent C.B. out to rake the lawn and then sexually assaulted her. C.B. recalled his father sending him out to rake and recalled that K.W. appeared sad following the incident. He noticed that K.W. spent a lot of time alone with [A.W.] and she would appear sad afterwards.

IN RE K.W.

[192 N.C. App. 646 (2008)]

12. Stanley County Department of Social Services substantiated physical abuse and inappropriate discipline of the children with a belt in the past. C.B. has scars on his back from where A.W. has whipped him with a belt in the past. There was also a history of domestic violence between the parents. [A.W.] has criminal convictions for assault on a female.

In reviewing the findings of fact of the trial court, this Court has held:

"A proper review of a trial court's finding of [abuse and] neglect entails a determination of (1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." "In a non-jury [abuse and] neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings."

*In re Pittman*, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (alterations in original; citations omitted).

We hold that these findings of fact are supported by clear and convincing evidence. Respondent's only argument with regard to findings eight through twelve is that they are based solely on K.W.'s allegations and testimony and respondent was denied the opportunity to impeach K.W. through use of the police report and the Myspace page. We find that K.W.'s testimony supported each finding of fact and her testimony was not incompetent because respondent was unable to question her regarding testimony that was either properly excluded (the police report) or harmlessly excluded (the Myspace website).

We have held that with regard to a judge's discretion in a juvenile adjudication hearing, "it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (citation omitted). We find that the trial court adhered to that principle in these findings of fact and made no error.

With regard to finding fifteen, respondent argues that the trial court misinterpreted the physician's testimony. The trial court found, "[t]he findings were not consistent with masturbation and are not

IN RE K.W.

[192 N.C. App. 646 (2008)]

customarily observed with consensual sex." The physician did say on cross-examination that the trauma could have been caused by a vibrator and that another teenager could have caused K.W. to lose her virginity. However, the physician clearly believed that the full hymeneal transection was the result of forced penetration. On redirect, she also stated that she would not expect to see that type of trauma due to the use of a vibrator.

Respondent contends that use of the word "forced" does not necessarily mean that the sex was nonconsensual. Respondent also argues that, in effect, the physician's testimony was that K.W.'s hymeneal transection could have been caused by consensual sex. Respondent has misconstrued the testimony. According to the physician, the exam results showed that forced penetration likely caused K.W.'s trauma, not consensual sex. The trial court's finding of fact fifteen is supported by clear and convincing evidence.

### III.

[5] Respondent makes the exact same argument with regard to conclusions of law three through six and nine that he made to findings of fact eight through twelve above. These conclusions are as follows:

3. The father's acts over the years of excessive corporal punishment, multiple sex partners outside of the marriage and failure to abide by YFS safety plans demonstrate the power and control of a domestic violence perpetrator.

4. The father's continual promise of a "last time" he would perpetrate against his daughter also demonstrates the acute manipulation of a domestic violence perpetrator.

5. Using forced sexual intercourse as discipline also placed the child in an injurious environment such that the child is a neglected child as defined in North Carolina Statute 7B-101(15).

6. The forced sexual intercourse by the father on his daughter in lieu of disciplinary actions is also a demonstration of the power and control of a domestic violence perpetrator.

. . .

9. A.W. subjected K.W. to "aggravated circumstances" as defined in North Carolina General Statutes § 7B-101(2) in that he sexually abused her for a period of over a year.

Again, as discussed above, there was clear and convincing evidence for the trial court to make these conclusions based on testimony and evidence presented. The fact that respondent was not able to use the police report and the Myspace page as evidence does not constitute prejudicial error.

## IV.

**[6]** Respondent next argues that the trial court's conclusion that the minor child was abused is not supported by sufficient, clear, and convincing evidence. We disagree.

N.C. Gen. Stat. § 7B-101(1)(d) (2007) defines an abused juvenile as one who has been raped or subject to other sexual offenses. The trial court found K.W. to be an abused juvenile as she was being raped by her father. We have found that a child's allegations, along with a physician's exam and testimony provide sufficient evidence for the trial court to make a finding of abuse. *See In re Mashburn*, 162 N.C. App. 386, 388-89, 591 S.E.2d 584, 587 (2004) (the trial court found as a matter of law that a minor female was sexually abused and neglected based on the child's allegations and a physician who testified that the minor had a vagina bacterial infection that was likely caused by a sexual act).

Furthermore, the trial court properly evaluated the physician's testimony. Unless an appellant provides evidence to the contrary, this Court has determined that there is a presumption that a trial court judge is aware of the "distinction between an expert witness' testifying (a) that sexual abuse in fact occurred or (b) that a victim has symptoms consistent with sexual abuse . . . ." *In re Morales*, 159 N.C. App. 429, 433, 583 S.E.2d 692, 695 (2003). Here, K.W. testified that her father raped her repeatedly over the course of a year, and her testimony was corroborated by a physician who found that her vaginal trauma was consistent with forced penetration. The physician was not presented to endorse K.W.'s testimony but to report clinical findings that were consistent with K.W.'s allegations. K.W.'s testimony, along with the physician's findings were sufficient for the trial judge to find that K.W. was abused pursuant to N.C. Gen. Stat. § 7B-101(1)(d).

## V.

**[7]** Finally, respondent claims that the trial court's conclusions that the minor child is neglected and dependent are not supported by sufficient, clear, and convincing evidence. We disagree.

IN RE K.W.

[192 N.C. App. 646 (2008)]

A neglected juvenile is one "who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15). The trial court believed K.W.'s testimony that she was raped by her father, and thus, the rape constituted sufficient evidence to find the child neglected as she was living in an environment injurious to her welfare.

A juvenile is dependent if he or she is "in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9). The trial court found that K.W. was dependent because her parents refused to adhere to the Safety Plan put in place by YFS. This conclusion was supported by K.W.'s testimony that A.W. agreed to cease all contact with K.W. in the Safety Plan, but moved back into the home about one week later. The trial court concluded as a matter of law that K.W. should remain in the legal custody of YFS, but to be placed with her mother on a trial basis.

There was no error in the court's decision. K.W. was in an injurious environment where her father continued to be present despite his agreement to stay away. K.W.'s mother was not seeking to enforce the Safety Plan, and therefore, YFS found it necessary to obtain a Non-Secure Custody Order to protect the child.

Based on the facts presented, there was clear and convincing evidence for the trial court to find K.W. abused, neglected and dependent.

For the foregoing reasons, we find no reversible error.

Affirmed.

Chief Judge MARTIN and Judge WYNN concur.