McCULLOUGH, Judge.
 

 *656
 
 Thedford Roy Rorie, Jr. ("defendant") appeals from judgments entered upon his convictions for one count of rape of a child in violation of N.C. Gen.Stat. § 14-27.2A, one count of indecent liberties with a child in violation of
 
 N.C. Gen. Stat. § 14202.1
 
 , attaining habitual felon status as defined in N.C. Gen.Stat. § 14-7.1, and three counts of sexual offense with a child in violation of N.C. Gen.Stat. § 14-27.4A. For the following reasons, we grant defendant a new trial.
 

 I.
 
 Background
 

 Defendant was arrested by the Winston-Salem Police Department in October 2012 on charges of first degree rape and taking indecent liberties with a child. In indictments returned by Forsyth County Grand Juries on 7 January 2013, 3 June 2013, and 8 July 2013, defendant was indicted on one count of rape of a child, one count of taking indecent liberties with a child, attaining habitual felon status, and three counts of sexual offense with a child.
 
 [1]
 
 Defendant pled not guilty to all charges.
 

 *340
 
 Prior to the case coming on for trial, defendant filed a notice of a potential Rule 412 issue and the State filed a motion in limine to exclude any evidence of the alleged victim's, A.P.'s
 
 [2]
 
 , prior sexual activity pursuant to Rule 412. These pre-trial matters were among the first issues considered after the offenses were joined and called for trial in Forsyth County Superior Court before the Honorable A. Moses Massey on 15 July 2013.
 

 *657
 
 Concerning defendant's notice of a potential Rule 412 issue, defendant argued prior inconsistent statements or false allegations by A.P. against two young boys living in the same house as A.P. that were similar in nature to the allegations in the present case should be allowed into evidence to attack A.P.'s credibility. In response, the State asserted A.P.'s prior statements regarding the two boys should be excluded because the statements did not amount to false allegations, but were merely the result of a misunderstanding. Moreover, the State asserted the evidence was irrelevant to the charges against defendant. Despite the disagreement over the admissibility of the evidence, both parties acknowledged they did not necessarily believe there was a Rule 412 issue because Rule 412 concerns activity, not statements. Following an in camera review of the interview in which A.P. made the statements at issue, the trial court made a tentative ruling that the evidence was irrelevant and inadmissible. Yet, emphasizing the ruling was tentative, the trial court added that some portion of the evidence may become relevant for impeachment purposes. Lastly, the trial court noted the evidence was covered by Rule 412 and the exceptions to Rule 412 did not appear to apply. The jury was empaneled and the trial proceeded the following day.
 

 The evidence presented at trial tended to show the following: Sometime in the spring or summer of 2011, A.P.'s mother ("Ms. Williams") allowed defendant and defendant's girlfriend ("Ms. Jones"), both of whom she was good friends with, to rent a room for themselves and Ms. Jones' baby in the four-bedroom house in which Ms. Williams, A.P., A.P.'s younger brother T.P., A.P.'s father ("Mr. Payne"), and, from time to time, others lived. A.P. was six years old at the time.
 

 Ms. Williams testified defendant was sweet to her kids, noting that A.P. referred to defendant as "Uncle Peanut." Ms. Williams recalled that defendant and A.P. sometimes called each other boyfriend and girlfriend, but she did not think it was serious and she never observed anything that caused her to believe there was an inappropriate relationship. Although Ms. Williams indicated defendant was not a normal babysitter for her kids, Ms. Williams testified defendant was left alone with A.P., T.P., and Ms. Jones' baby one night in November 2011 while she and Ms. Jones went to play bingo. The evidence tended to show that Ms. Williams and Ms. Jones were away from the house from six or seven o'clock that evening until approximately two o'clock the next morning.
 

 A.P. testified that while Ms. Williams and Ms. Jones were at bingo and her dad was at work, defendant "raped [her] in both parts." When asked more specifically what defendant did, A.P. testified that "[defendant] put his private in [her] private and put his private in [her] butt."
 

 *658
 
 A.P. then described in more detail how defendant came into her and T.P.'s bedroom while they were asleep, woke her up, raped her in both parts, let her go back to sleep, and then woke her up a second time and repeated the acts. A.P. also testified that on days prior to the night of the alleged rape, defendant put his private in her mouth. A.P. testified this happened in defendant's bedroom with the door locked while the other adults were outside or somewhere else.
 

 A.P. did not immediately tell Ms. Williams, or anyone else, about what defendant did because she thought Ms. Williams would get angry. Various witnesses testified they did not notice a change in the interactions between defendant and A.P. following the bingo night in question in November 2011.
 

 *341
 
 Ms. Jones became pregnant with defendant's child during the time they lived in the house and gave birth in February 2012. Defendant and Ms. Jones moved out shortly thereafter. It was not until after defendant and Ms. Jones moved out that A.P. told others what had happened.
 

 Soon after defendant and Ms. Jones moved out of the house in March 2012, another man ("Mr. Coles"), his girlfriend, and his girlfriend's three children, all older than A.P., moved in. Sometime thereafter in May 2012, A.P. mentioned to the kids that defendant had raped her. One of the kids then told Mr. Coles, who questioned A.P. and called Ms. Williams to inform her of A.P.'s accusations. Ms. Williams came home upon receiving the call from Mr. Coles, questioned A.P. about the allegations, and took A.P. to the emergency department of the hospital, where A.P. was examined and interviewed.
 

 The sexual assault nurse examiner who examined A.P. reported a "5:00 hymenal notch that [she] was concerned about." The nurse testified that the notch could be consistent with a penetrating injury. The nurse, however, was not certain because the alleged rape had purportedly occurred months earlier. The evidence further revealed that on 13 December 2011, A.P. was previously taken to the emergency department at the hospital complaining of pain while urinating. At that time, the attending physician in the pediatric emergency department performed only an external vaginal examination because there was no report of sexual abuse. Upon observing no abnormalities, the physician diagnosed A.P. with vaginitis. The physician, however, testified at trial that one of the potential causes of vaginitis is sex.
 

 Following the State's evidence, defendant took the stand in his own defense and denied all of A.P.'s allegations. Defendant's recollection of the night in November 2011 when he watched A.P. and T.P. while Ms.
 
 *659
 
 Williams and Ms. Jones went to bingo differed from other witnesses' recollection. Particularly noteworthy, defendant testified that Ms. William's sister was at the house the entire time and stayed with the children while he left the house on three separate occasions to deliver marijuana. Defendant also testified that his niece came to the house around eleven o'clock that night and left shortly after midnight. Defendant recalled that he went to check on A.P and T.P. several times throughout the course of the night and each time they were asleep in their bedroom.
 

 Defendant also sought to present evidence of A.P.'s sexual knowledge by introducing evidence that he found A.P. watching a pornographic video. Specifically, on
 
 voir dire,
 
 defendant testified he caught A.P. and T.P. watching a pornographic DVD of "[a]dults naked having sex[ ]" one morning while the other adults in the house were still asleep. Defendant stated that he asked A.P. what she was watching and A.P. replied "[she] was trying to find cartoons." Defendant then "immediately cut it off, found them a cartoon movie, [and] put it in." Defendant testified he told Ms. Williams and Mr. Payne what he had seen when they woke up, which caused Mr. Payne to go through and remove all of the adult DVDs. Upon considering the arguments from both sides, the trial court initially overruled the State's objection to the evidence. The trial court, however, later reversed its decision and sustained the State's objection on the basis that the evidence was "irrelevant and is not admissible, particularly given the fact that in this case there is evidence consistent with sexual abuse, physical evidence consistent with sexual abuse."
 

 On 22 July 2013, the jury returned guilty verdicts for the rape of a child, taking indecent liberties with a child, and sexual offense with a child offenses. The following day the jury returned a verdict finding the presence of an aggravating factor, defendant entered a guilty plea to attaining the status of a habitual felon, and the trial court consolidated the offenses between the two judgments for sentencing. Finding the factors in aggravation outweighed the factors in mitigation, the trial court sentenced defendant in the aggravated range to two consecutive terms of 345 to 426 months imprisonment. Furthermore, the trial court ordered defendant to register as a sex offender for life and enroll in satellite based monitoring for life upon his release from imprisonment. Defendant gave notice of appeal in open court following sentencing.
 

 *342
 
 II.
 
 Discussion
 

 On appeal, defendant raises the following three issues: whether (1) the trial court erred by excluding evidence that he found A.P. watching the pornographic video; (2) the trial court erred by excluding evidence
 
 *660
 
 of A.P.'s prior allegations and inconsistent statements regarding sexual assaults by two boys living in the house; and (3) the trial court's cumulative evidentiary errors deprived him of a fair trial.
 

 Evidence of Pornography
 

 Defendant first contends the trial court erred in excluding the evidence that he found A.P. watching a pornographic video. Defendant argues the evidence was relevant and admissible to establish an alternative basis for A.P.'s sexual knowledge, from which A.P. could fabricate the allegations against defendant. Defendant contends this evidence was important to his case because absent the evidence, a jury would assume a child of A.P.'s age would not have the sexual knowledge to fabricate such allegations.
 

 Expanding on the background, defendant's counsel recognized there was a potential issue with this evidence during the trial and requested to discuss the matter out of the presence of the jury. Following a brief bench conference, the trial court excused the jury and conducted a
 
 voir dire.
 
 After initially ruling that the defendant could testify about finding A.P. watching the pornographic video, the trial court reconsidered its decision and ruled that the evidence was irrelevant and inadmissible based on its interpretation of
 
 State v. Yearwood,
 

 147 N.C.App. 662
 
 ,
 
 556 S.E.2d 672
 
 (2001).
 

 At the outset of our analysis, we note that it is not clear from the record whether the trial court excluded the evidence solely on the basis of relevance or whether the trial court considered Rule 412. Upon consideration of both on appeal, we hold the trial court erred in either instance.
 

 "The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated."
 
 State v. Griffin,
 

 136 N.C.App. 531
 
 , 550,
 
 525 S.E.2d 793
 
 , 806 (citation and quotation marks omitted),
 
 appeal dismissed and disc. review denied,
 

 351 N.C. 644
 
 ,
 
 543 S.E.2d 877
 
 (2000). In a sexual abuse case, evidence regarding the victim's prior sexual behavior is severely restricted pursuant to N.C. Gen.Stat. § 8C-1, Rule 412 (2013) (the "Rape Shield Statute" or " Rule 412"), which provides the sexual behavior of the complainant, defined as "sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial[,]" is irrelevant unless the behavior falls under specified exceptions. N.C. Gen.Stat. § 8C-1, Rule 412(a) and (b). Rule 412 is applicable in trials on charges of rape and sex offense,
 
 see
 
 N.C. Gen.Stat. § 8C-1, Rule 412(d), and
 
 *661
 
 thus clearly applies in this case involving charges of rape of a child and sexual offense with a child. Yet, there is no North Carolina case law interpreting the admission of this particular type of evidence in a child sex offense case.
 

 The State argues A.P.'s viewing of pornography is evidence of A.P.'s sexual activity other than with defendant and, therefore, should be excluded pursuant to Rule 412. In support of its argument, the State relies on
 
 State v. Bass,
 

 121 N.C.App. 306
 
 ,
 
 465 S.E.2d 334
 
 (1996), and contends the trial court's consideration of
 
 Yearwood
 
 indicates the trial court analyzed the relevancy of the evidence pursuant to Rule 412. Upon review, we find the present case distinguishable from
 
 Bass
 
 and
 
 Yearwood.
 

 The State contends
 
 Bass
 
 is "[t]he closest case in North Carolina that deals with the issue of 'sexual knowledge.' " In
 
 Bass,
 
 a defendant charged with taking indecent liberties with a child and first degree statutory sexual offense sought to show the six year old complainant had the sexual knowledge to fabricate the allegations by introducing evidence "that the [complainant] had been assaulted in a similar manner some three years earlier."
 
 Bass,
 

 121 N.C.App. at 308-09
 
 ,
 
 465 S.E.2d at 335
 
 . The trial court excluded the evidence pursuant to Rule 412 and the defendant appealed the ruling following his convictions.
 
 Id.
 
 at 309,
 
 465 S.E.2d at 335
 
 . Although this Court granted a new trial based on an improper closing argument by the
 
 *343
 
 prosecution, it upheld the trial court's exclusion of the evidence of prior abuse concluding "the prior abuse alleged ... [was] 'sexual activity' within the ambit of Rule 412."
 
 Id.
 
 at 309-10,
 
 465 S.E.2d at 336
 
 .
 

 In
 
 Yearwood,
 
 relied on by the trial court, an expert in child psychology testified that the twelve year old complainant was extremely distressed and agitated when they met four days after the assault and opined that the complainant's behavior was consistent with patterns observed in a sexually assaulted victim.
 
 Yearwood,
 

 147 N.C.App. at 664
 
 ,
 
 556 S.E.2d at 674
 
 . Yet, following
 
 voir dire
 
 in which the expert "admitted to some knowledge of alleged incidents involving [the child] and her father, where the father would allegedly strip in front of [the child] and expose her to pornographic material [,]" the trial court denied the defendant the opportunity to explore the purported sexual abuse by the child's father, which occurred four to seven years earlier.
 
 Id.
 
 at 664-65,
 
 556 S.E.2d at 674
 
 . On appeal, the defendant argued the trial court erred because "the evidence [was] relevant to cast doubt on the credibility of [the expert]" because "this exposure may have been the cause of [the complainant's] behavior which led [the expert] to conclude that [the complainant] had been sexually assaulted."
 

 *662
 

 Id.
 
 at 665,
 
 556 S.E.2d at 675
 
 . This Court rejected defendant's argument, noting the defendant "made no showing that the trial court's limitation of the cross examination of [the expert] could have improperly influenced the jury's verdict."
 

 Id.
 

 This Court further noted that "although the evidence ... was not excluded by [ Rule 412 ], ... the trial court nevertheless did not abuse its discretion in refusing to permit defendant from introducing such evidence because there is no indication in the record that [the] evidence was relevant to [the complainant's] credibility."
 
 Id.
 
 at 667,
 
 556 S.E.2d at 676
 
 .
 

 We find the present case distinguishable. In both
 
 Bass
 
 and
 
 Yearwood,
 
 the evidence excluded was evidence of sexual abuse of the complainants occurring years earlier. Furthermore, this Court's holding in
 
 Yearwood
 
 was primarily based on the fact that "there was abundant evidence, even without the testimony of [the expert], that [the complainant] had been sexually assaulted."
 
 Id.
 
 at 666,
 
 556 S.E.2d at 675
 
 . In this case, the evidence was not evidence of prior sexual abuse but evidence that A.P. was discovered watching a pornographic video, which defendant sought to introduce to explain an alternative source of A.P.'s sexual knowledge. Without the evidence suggesting an alternative source of A.P.'s sexual knowledge in this case, it is likely the jury concluded A.P.'s allegations were true because A.P. was a critical witness against defendant and there was no known basis from which she could have had the knowledge to fabricate the allegations.
 

 Although there is no controlling case law specific to pornography evidence, we find cases from North Carolina and other jurisdictions persuasive. In
 
 State v. Guthrie,
 
 this Court granted the defendant a new trial upon holding the trial court erred in limiting cross-examination of the victim about a letter she voluntarily wrote to a school friend requesting sex.
 
 State v. Guthrie,
 

 110 N.C.App. 91
 
 ,
 
 428 S.E.2d 853
 
 (1993). This Court explained that the testimony regarding the sexually suggestive letter was not the type of evidence which Rule 412 seeks to exclude because the letter was not evidence of sexual activity, but evidence of language.
 
 Id.
 
 at 93,
 
 428 S.E.2d at 854
 
 . "Therefore, [the] testimony concerning the letter [was] not deemed irrelevant by Rule 412 and was improperly excluded on that basis."
 
 Id.
 
 at 94,
 
 428 S.E.2d at 854
 
 . More closely analogous to this case,
 
 in People v. Mason,
 
 the Illinois Appellate Court, Fourth District, held the Illinois' Rape Shield Statute, which is similar to North Carolina's, did not bar the admission of evidence that a seven year old victim had viewed sexually explicit videotapes.
 
 People v. Mason,
 

 219 Ill.App.3d 76
 
 ,
 
 161 Ill.Dec. 705
 
 ,
 
 578 N.E.2d 1351
 
 , 1353 (1991). In so holding, the court explained:
 

 that the rape-shield statute does not [bar the evidence] for two reasons. First, the rape-shield statute applies to
 
 *663
 
 "prior sexual activity" or "reputation." The viewing of pornographic videotapes by a curious seven year old does not constitute evidence of either. Second, the policies behind the rape-shield statute were the prevention of harassment and humiliation of victims and
 
 *344
 
 the encouragement of victims to report sexual offenses. Those policies cannot justify denying a defendant the right to refute evidence which tends to establish sexual abuse took place. The right to confront and call witnesses on one's own behalf are essential to due process.
 

 Id.
 

 (internal citation omitted).
 

 Considering
 
 Guthrie
 
 and
 
 Mason,
 
 we now hold the evidence that A.P. was discovered watching a pornographic video, without anything more, is not evidence of sexual activity barred by the Rape Shield Statute. Although Rule 412 is applicable in trials involving charges of rape and sex offense, we do not believe it was intended to exclude this type of evidence. Moreover, this evidence was relevant to explain an alternative source of A.P.'s sexual knowledge, from which she could have fabricated the allegations.
 

 The only way this evidence would be excluded is under a proper Rule 403 analysis. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." N.C. Gen.Stat. § 8C-1, Rule 403 (2013). There is no indication the trial court excluded the evidence of A.P. watching the pornographic video in this case based on Rule 403.
 

 Additionally, we hold defendant was prejudiced by the exclusion of the evidence because A.P. was a key witness in the case against defendant and attacking her credibility was central to defendant's defense. Because it is unlikely a child A.P.'s age would have sufficient sexual knowledge to make accusations such as those in this case absent actual abuse, the evidence that A.P. was discovered watching a pornographic video was important to explain an alternative basis for A.P.'s sexual knowledge. Excluding the evidence limited defendant's defense.
 

 Prior Inconsistent Statements
 

 On appeal, defendant also contends the trial court erred in excluding evidence of A.P.'s prior allegations and inconsistent statements about sexual assaults committed by two young boys living in the house as irrelevant under Rule 412. Although we reverse defendant's conviction
 
 *664
 
 based on the first issue, we address the merits of this second argument because the issue is likely to recur.
 

 Defendant primarily relies on the following three cases in support of his argument that the trial court erroneously excluded evidence of A.P.'s prior allegations and inconsistent statements:
 
 State v. Younger,
 

 306 N.C. 692
 
 ,
 
 295 S.E.2d 453
 
 (1982),
 
 State v. Ginyard,
 

 122 N.C.App. 25
 
 ,
 
 468 S.E.2d 525
 
 (1996), and
 
 State v. Baron,
 

 58 N.C.App. 150
 
 ,
 
 292 S.E.2d 741
 
 (1982). In each of those cases, this State's appellate courts granted new trials to defendants convicted of sexual offenses because the trial courts excluded evidence of prior allegations and inconsistent statements by the alleged victims that the defendants proffered for impeachment purposes.
 
 See e.g.,
 
 (
 
 Younger,
 

 306 N.C. at 697
 
 ,
 
 295 S.E.2d at
 
 456 ) (Applying a prior version of the Rape Shield Statute, the Court recognized "[w]e have repeatedly held that prior inconsistent statements made by a prosecuting witness may be used to impeach his or her testimony when such statements bear directly on issues in the case. It is our belief that the statute was not designed to shield the prosecutrix from the effects of her own inconsistent statements which cast a grave doubt on the credibility of her story.... In other words, the statute was not intended to act as a barricade against evidence which is used to prove issues common to all trials. Inconsistent statements are, without a doubt, an issue common to all trials.") (internal citations omitted). Upon review of those cases, we agree the trial court erred in this case.
 

 As this Court has recognized,
 

 [T]he "rape shield statute ... is only concerned with the sexual activity of the complainant. Accordingly, the rule only excludes evidence of the actual sexual history of the complainant; it does not apply to false accusations, or to language or conversations whose topic might be sexual behavior." Therefore, false accusations do not fall under the ambit of Rule 412 and are admissible if relevant.
 

 In re K.W.,
 

 192 N.C.App. 646
 
 , 650,
 
 666 S.E.2d 490
 
 , 494 (2008) (quoting
 
 *345
 

 State v. Thompson,
 

 139 N.C.App. 299
 
 , 309,
 
 533 S.E.2d 834
 
 , 841 (2000) ) (emphasis and alterations omitted). Accordingly, the trial court's determination in this case that A.P.'s prior allegations and inconsistent statements were "covered by Rule 412" was error. Although these statements involve the mention of sexual behavior, A.P.'s prior allegations and inconsistent statements are not within the purview of Rule 412 and may be admissible to attack A.P.'s credibility.
 
 *665
 
 We do not, however, hold the statements necessarily should have been admitted into evidence at trial. As the Court indicated in
 
 Younger,
 
 "the relevance and probative value ... must be weighed against [the] prejudicial effect."
 
 Younger,
 

 306 N.C. at 697
 
 ,
 
 295 S.E.2d at 456
 
 . Thus, whether A.P.'s prior allegations and inconsistent statements come into the evidence at trial should be determined on retrial subject to a proper Rule 403 analysis.
 

 Cumulative Error
 

 In the event we held neither of the evidentiary errors standing alone was sufficient to warrant a new trial, defendant argues the cumulative effect of the errors deprived him of a fair trial. Since we reverse and remand for a new trial on both of the evidentiary issues, we need not further address the effect of cumulative error.
 

 III.
 
 Conclusion
 

 For the reasons discussed above, we hold the trial court erred in excluding the evidence that defendant discovered A.P. watching a pornographic video and erred in determining A.P.'s prior allegations and inconsistent statements were irrelevant under Rule 412. Thus, we grant defendant a new trial.
 

 NEW TRIAL.
 

 Chief Judge McGEE and Judge DIETZ concur.
 

 [1]
 

 On 3 June 2013, a Forsyth County Grand Jury also returned a superseding indictment changing the date range of the rape of a child and the taking indecent liberties with a child offenses in the 7 January 2013 indictment.
 

 [2]
 

 Initials are used throughout the opinion to protect the identities of minor children.