*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARL THOMAS MASI,

        Defendant-Appellant.

FOR PUBLICATION
March 9, 2023
9:00 a.m.

No. 358922
Macomb Circuit Court
LC No. 2018-003669-FC

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

GARRETT, J.

This interlocutory appeal arises out of the alleged sexual assault of the minor complainants—AU, MU, and SU—by defendant Carl Thomas Masi. The trial court excluded several pieces of evidence related to the complainants' sexual histories and denied Masi's motion for additional discovery of the complainants' privileged records. On appeal, Masi argues that the trial court (1) abused its discretion by failing to admit evidence that AU and SU viewed pornography, evidence that AU had been sexually abused by her uncle, and evidence of prior sexual conduct between AU and SU, and (2) abused its discretion by concluding that the complainants' privileged records were not material to Masi's defense. We hold that the rape-shield statute, MCL 750.520j, does not apply to evidence that SU viewed pornography, but we remand for the trial court to determine whether the evidence is otherwise admissible under the Michigan Rules of Evidence. In all other respects, we affirm the trial court's orders.

## I. BACKGROUND

This case stems from a wide array of allegations that Masi sexually abused AU, MU, and SU. At the preliminary examination, AU testified that Masi was her great-uncle. She, as well as her sisters, MU and SU, were adopted by Masi after they had been placed in foster care. AU testified about several instances of sexual abuse committed by Masi against her when she was between 12 and 14 years old. These instances involved vaginal penetration with Masi's penis, Masi forcing AU to touch his penis, Masi forcing AU to perform fellatio on him, and Masi grabbing AU's buttocks. Masi allegedly abused AU at his house and office. AU testified that she was also present several times when Masi and Maria Ryder—Masi's employee who sometimes

-1-

stayed overnight—had sexual intercourse, and Masi forced AU to kiss and perform oral sex on Ryder.

SU testified to multiple instances of sexual assault allegedly committed by Masi against her beginning when she was five or six years old. She recalled occasions when Masi touched her vagina, Masi forced her to kiss Ryder, Masi placed his penis inside SU's mouth, and Masi grabbed SU's buttocks. She also recalled an incident when Masi forced her to perform oral sex on Ryder. SU stated that Masi made her watch pornography and that she watched pornography on her own. Finally, MU, the youngest complainant, testified that she was sexually assaulted by Masi on multiple occasions. She recalled an incident in her bedroom when Masi forced both MU and SU to perform fellatio on him. MU also recalled an incident when she caught SU looking at pornography on MU's phone. At the end of the preliminary examination, the trial court bound Masi over on 12 counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c.[1]

Soon after, the parties filed various pretrial motions. Relevant to the issues on appeal, Masi moved to admit evidence of prior sexual acts of the complainants and grant an *in camera* hearing. Masi sought the introduction of several pieces of evidence at trial, including evidence that AU and SU watched pornography, evidence of sexual abuse allegations by AU against her Uncle Robby, and evidence that SU was touched inappropriately by AU in 2012. Masi requested that the court conduct an *in camera* hearing to determine the admissibility of the submitted evidence. The trial court found that Masi "met his initial burden by making an adequate offer of proof and demonstrating the relevance of the evidence related to the victims' prior sexual conduct." The court granted an *in camera* hearing to review the above-described evidence and ordered Masi to produce evidence for the *in camera* review to support his offer of proof. Following an *in camera* review, the court entered an order stating that Masi failed to produce evidence of AU and SU watching pornography on their own or evidence of AU's sexual conduct with SU. The court also ruled that the documents provided by Masi relating to alleged sexual abuse by Uncle Robby were inadmissible at trial because the evidence did not satisfy the requirements for admissibility in *People v Morse*, 231 Mich App 424, 437; 586 NW2d 555 (1998).

Masi moved for reconsideration, arguing that the trial court should admit the evidence that AU and SU were exposed to pornography either through Uncle Robby or their own pursuits. Masi contended that this evidence was not "sexual conduct" covered by the rape-shield statute and that it was relevant to establish an alternate source of the complainants' advanced sexual knowledge. The trial court denied Masi's motion for reconsideration. The court first noted that Masi never asked the court to review SU's preliminary examination testimony about watching pornography for its *in camera* hearing. Even so, the court concluded that "the instances of AU and SU's viewing of pornography, whether alone or with Uncle Robby, are specific instances of sexual conduct subject to the rape-shield statute." The court then held that the evidence of pornographic exposure was inadmissible under *Morse*.

---

[1] Ryder was charged as a codefendant, but the trial court later granted a request to sever Ryder's trial from Masi's trial. Ryder is not a party to this appeal.

In another pretrial motion, Masi sought discovery of the complainants' privileged medical records, mental health records, Child Protective Services (CPS) records, and school records. Masi requested that the trial court conduct an *in camera* review of these records to determine their materiality at trial. The prosecution provided Masi with the complainants' CPS records. And the court granted Masi's request for an *in camera* review of the complainants' medical records, mental health records, and school records because Masi provided a good-faith basis for believing that the records would show that the complainants' trauma impacted their ability to be truthful and caused them to falsely accuse Masi. But following an *in camera* review of these privileged records, the court found that "they do not contain any material information necessary to the defense." Thus, the court found that Masi was not entitled to the discovery of these records. Masi unsuccessfully moved for reconsideration of this order.

This appeal followed by leave granted.[2]

## II. STANDARDS OF REVIEW

Masi challenges the trial court's orders excluding several categories of evidence. We review a trial court's decision to exclude evidence for an abuse of discretion. *People v Abcumby-Blair*, 335 Mich App 210, 238; 966 NW2d 437 (2020). "A trial court abuses its discretion only when that decision falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). "To the extent that the trial court's evidentiary decision involves underlying questions of law, such as whether a statute precludes admissibility of evidence, this Court reviews those questions of law de novo." *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). De novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Masi also argues that the trial court's refusal to admit his proposed evidence will deny him his constitutional right to present a defense. "Whether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

## III. EXCLUSION OF PROPOSED EVIDENCE

Masi seeks reversal of the trial court's order excluding evidence that (1) AU and SU viewed pornography, (2) AU was sexually abused by her uncle, and (3) AU and SU engaged in sexual conduct.

## A. FOUNDATIONAL LAW

The Confrontation Clause of the Sixth Amendment to the United States Constitution reads: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

---

[2] This Court initially denied Masi's application for leave to appeal. *People v Masi*, unpublished order of the Court of Appeals, entered November 16, 2021 (Docket No. 358922). Our Supreme Court, in lieu of granting leave to appeal, remanded to this Court for consideration as on leave granted. *People v Masi*, 977 NW2d 562 (Mich, 2022). The trial court has stayed the lower court proceedings pending interlocutory review.

witnesses against him . . . ." US Const, Am VI; see also Const 1963, art 1, § 20. Although the Confrontation Clause generally permits broad cross-examination of a witness, our Legislature recognized that in a small subset of circumstances, a witness's right to privacy circumscribes the breadth of cross-examination. *People v Hackett*, 421 Mich 338, 347; 365 NW2d 120 (1984) ("[N]either the Sixth Amendment Confrontation Clause, nor due process, confers on a defendant an unlimited right to admit all relevant evidence or cross-examine on any subject."). As such, the Legislature enacted Michigan's "rape-shield" law, which limits cross-examination of a victim's sexual history. See *People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996). The statute provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). [MCL 750.520j.]

"The rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." *Sharpe*, 502 Mich at 326 (quotation marks and citation omitted).

## B. VIEWING OF PORNOGRAPHY

Masi argues that the trial court erred by excluding evidence that AU and SU had, at various times, viewed pornography. In Masi's view, this evidence is relevant to show that the source of the complainants' advanced sexual knowledge did not stem from Masi's alleged conduct.

Masi initially asserts that the viewing of pornography is not subject to the rape-shield statute because it is not "sexual conduct" under the law. The rape-shield statute does not define "sexual conduct." MCL 750.520j. Relatedly, no published Michigan caselaw has addressed

whether the viewing of pornography constitutes "sexual conduct" for purposes of MCL 750.520j.[3] "When interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent." *Sharpe*, 502 Mich at 326. We look to the statutory language, "assign[ing] each word and phrase its plain and ordinary meaning within the context of the statute." *Id*. at 327. Clear and unambiguous language is enforced as written. *Id*. at 326-327. But "if reasonable minds could differ concerning the statute's meaning," judicial construction is appropriate. *People v Mikulen*, 324 Mich App 14, 21; 919 NW2d 454 (2018).

Because "sexual conduct" is undefined, we may consult dictionary definitions to aid in our interpretation of this phrase. See *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017). "When consulting a dictionary, this Court does not relinquish its duty to exercise its best interpretive judgment" because a dictionary definition does "not conclusively resolve linguistic questions." *In re Erwin Estate*, 503 Mich 1, 19-20; 921 NW2d 308 (2018). "Sexual" is defined as "of, relating to, or associated with sex or the sexes" or "having or involving sex." *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Random House Webster's College Dictionary* (2d ed) (defining "sexual" as "of or pertaining to sex" or "occurring between or involving the sexes"). And "conduct" means as "a mode or standard of personal behavior especially as based on moral principles" or "the act, manner, or process of carrying on." *Merriam-Webster's Collegiate Dictionary* (11th ed). While the act of viewing pornography constitutes conduct, definitions of "sexual" leave ambiguity about whether the Legislature intended for the phrase "sexual conduct" to pertain to evidence that a victim viewed lawful pornography. The question here is not whether lawful pornography itself involves content of a sexual nature—we agree that it does—but whether mere *exposure or viewing* of lawful pornography constitutes sexual conduct. The dictionary definitions do not offer a conclusive resolution of this question. Put another way, while lawful pornography traditionally involves images or videos of individuals engaged in sexual activity, it does not necessarily follow that the individual watching the pornography is engaged in sexual conduct. Particularly with minor victims, viewing pornography could be evidence of a variety of things, including curiosity or accident, that are not sexual in nature.

Our Supreme Court has previously suggested that the sources of a victim's sexual knowledge may not themselves constitute evidence of "sexual conduct." See *People v Arenda*, 416 Mich 1, 13; 330 NW2d 814 (1982). In *Arenda*, the Court upheld Michigan's rape-shield statute against a facial constitutional challenge and explained why "the prohibitions in the rape-shield law will not deny a defendant's right of confrontation in the overwhelming majority of cases." *Id*. at 13, 15. The Court elaborated:

---

[3] In a single unpublished decision, this Court concluded that the trial court did not err by refusing to admit evidence of pornography found on the minor victim's phone. *People v Bailey*, unpublished per curiam opinion of the Court of Appeals, issued November 28, 2017 (Docket 332984), p 6. This Court summarily stated: "Defendant fails to convince us that the evidence did not pertain to 'sexual conduct' by [the minor victim] under the rape-shield statute, MCL 750.520j . . . ." *Id*. Unpublished decisions are not binding, MCR 7.215(C)(1), and we draw no persuasive value from the unreasoned conclusion in *Bailey*.

[I]n most of the cases in which the source of the victim's ability to describe a sexual act may be relevant, there are other means by which one can inquire into that source of knowledge without necessarily producing evidence of sexual conduct with others. Counsel could inquire whether the victim had any experiences (e.g., reading a book, seeing a movie, conversing with others, schoolwork or witnessing others engaged in such activity) which aided him or her in describing the conduct that is alleged. [*Id*. at 13.]

Put differently, *Arenda* suggests that a victim's mere exposure to sexual materials or mediums falls outside the scope of the rape-shield statute's exclusion of evidence of the victim's "sexual conduct." As *Arenda* implicitly recognized, too expansive an interpretation of "sexual conduct" could encompass innocuous conduct such as a minor exposed to sexual imagery in a book or movie, or a minor walking in on their parents engaged in sexual activity. Here, the evidence Masi seeks to admit includes evidence that SU viewed pornography on her own. Without more, such as evidence that the viewer engaged in acts of sexual gratification, evidence of viewing pornography is not "sexual conduct" prohibited under MCL 750.520j.

Furthermore, we give persuasive value to caselaw from sister states that has reached a similar conclusion. See *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020). Several appellate courts in other jurisdictions have concluded that evidence of pornographic exposure did not fall under the scope of their state's rape-shield provision. See, e.g., *Basham v Commonwealth*, 455 SW3d 415, 419 (Ky, 2014) ("[E]vidence of inadvertent exposure to pornographic material would not be subject to [Kentucky's rape-shield provision] because it would not be evidence of the alleged victim's sexual behavior or predisposition."); *State v Rorie*, 242 NC App 655, 663; 776 SE2d 338 (2015) ("Evidence that [the victim] was discovered watching a pornographic video, without anything more, is not evidence of sexual activity barred by the Rape Shield Statute."); *People v Mason*, 219 Ill App 3d 76, 78; 578 NE2d 1351 (1991) ("The viewing of pornographic videotapes by a curious seven year old does not constitute evidence of either" prior sexual activity or reputation.). These cases support our conclusion that evidence of a victim viewing lawful pornography, without more, is not evidence of "sexual conduct" subject to Michigan's rape-shield statute.

In this case, Masi seeks to admit evidence that AU viewed pornography before her adoption by Masi. A 2010 police report contained allegations by AU that her Uncle Robby liked to watch "nasty movies" on DVD, that Uncle Robby masturbated in front of her, that Uncle Robby would "wake her up when everyone else was sleeping to watch 'porno movies' with him," that Uncle Robby kissed her on her lips, and that Uncle Robby once put his penis in her mouth. Thus, this evidence of pornographic exposure came in the context of sexual abuse allegations. For reasons discussed further below, this evidence falls within the rape-shield's prohibition on evidence of a victim's sexual conduct because it occurred amidst alleged acts of sexual abuse perpetrated by Uncle Robby. On the other hand, evidence of pornographic exposure involving SU primarily came from SU's preliminary examination testimony.[4] SU testified that she once got in trouble for using

---

[4] In the trial court's order denying reconsideration of its evidentiary rulings, the trial court noted that Masi did not ask the trial court to review the preliminary examination transcript for evidence

-6-

MU's phone to look at pornography while living with Masi and that she viewed pornography on her own on other occasions. Evidence that SU viewed pornography alone, without more, is not "sexual conduct" for purposes of the rape-shield statute. We emphasize that our conclusion is confined to the circumstances before us, where there is no evidence that the viewer engaged in sexual acts.[5]

Although the evidence that SU viewed pornography is not subject to the prohibitions of the rape-shield statute, the trial court did not determine whether the evidence is otherwise admissible under the rules of evidence. See *Sharpe*, 502 Mich at 331. Therefore, we remand to the trial court to make this determination in the first instance. In conducting this analysis, the trial court should consider whether evidence that SU viewed pornography is relevant to Masi's theory that the evidence provides an alternative source for learning age-inappropriate sexual knowledge. See *Morse*, 231 Mich App at 436; see also *People v Duenaz*, 306 Mich App 85, 93; 854 NW2d 531 (2014). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is generally admissible, but evidence that is not relevant is inadmissible. MRE 402. Even if the trial court finds that the evidence is relevant under Rule 401, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. This analysis under Rule 403 "requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). To the extent these factors apply to the evidence of SU viewing pornography, the trial court should consider them on remand. The trial court should also examine whether admission of this evidence presents "a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

---

of pornographic exposure. Considering that this evidence was already a matter of record before the *in camera* review, we consider its admissibility on the merits.

[5] SU also testified that, on other occasions, Masi made her watch pornography on his iPad, including sometimes with AU. The rape-shield statute does not shield Masi from admission of this evidence because it is directly relevant to the sequence of events alleged against him in the charged offenses. Nor does Rule 404(b)'s limitation on the admission of "other acts" evidence apply to acts performed contemporaneously with the charged offenses or to facilitate their commission. See *People v Jackson*, 498 Mich 246, 262-263; 869 NW2d 25 (2015). See also *People v Mardlin*, 487 Mich 609, 616 n 10; 790 NW2d 607 (2010) ("MRE 404(b) is not even implicated if the prosecution seeks to introduce logically relevant evidence of other acts performed by the defendant if the evidence does not generate an intermediate inference as to his character.").

In sum, we conclude that evidence of SU viewing pornography, without more, falls outside the exclusionary scope of the rape-shield statute, but we remand for the trial court to determine whether the evidence is otherwise admissible under the rules of evidence.

## C. PRIOR SEXUAL ABUSE

Next, Masi argues that the trial court abused its discretion by failing to admit evidence of Uncle Robby's prior sexual abuse of AU.

Unlike evidence that SU watched pornography on her own, evidence of prior sexual abuse of AU falls within the rape-shield statute's prohibition on "[e]vidence of specific instances of the victim's sexual conduct." MCL 750.520j(1); see also *Duenaz*, 306 Mich App at 92-93. This includes evidence that Uncle Robby made AU watch pornography, which unlike SU's individual viewing, was itself alleged criminal activity that was a component of the involuntary sexual conduct suffered by AU. See MCL 722.675(1)(b) (making it a felony to "[k]nowingly exhibit[] to a minor a sexually explicit performance that is harmful to minors"). And this evidence does not fit within one of the statute's exceptions. See MCL 750.520j(1)(a) and (b). Still, we have recognized that "in limited situations evidence the [rape-shield] statute excludes may nevertheless be relevant and admissible to preserve a defendant's constitutional right of confrontation." *Duenaz*, 306 Mich App at 93. For example, evidence offered to show a complainant's bias or motive, or evidence that a complainant has made false accusations of sexual assault, may be admissible notwithstanding the rape-shield law's general exclusionary rule. *Hackett*, 421 Mich at 348. In exercising its discretion to determine admissibility, the trial court "should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id*. at 349.

When proposing evidence to overcome the general exclusionary bar of the rape-shield statute, "[t]he defendant is obligated initially to make an offer of proof regarding the proposed evidence and to demonstrate its relevance." *People v Byrne*, 199 Mich App 674, 678; 502 NW2d 386 (1993). "Even where the defendant surmounts that first hurdle, the next step is not admissibility at trial, but an in camera evidentiary hearing to determine the admissibility of the evidence in light of the constitutional inquiry." *Id*. At this *in camera* hearing, the trial court must determine whether

> (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainants, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding. [*Morse*, 231 Mich App at 437.]

The trial court held an *in camera* hearing and concluded that evidence of prior sexual abuse by Uncle Robby did not satisfy the *Morse* test for admissibility because there was no evidence of a conviction related to the prior sexual conduct. We agree that evidence of Uncle Robby's sexual abuse of AU does not satisfy the second *Morse* prong because he was not convicted of criminal

sexual conduct against AU.[6] It is undisputed that Uncle Robby was never criminally charged or convicted as a result of his alleged sexual abuse of AU. Further, Uncle Robby's alleged abuse of AU was not "significantly similar" to the abuse of AU allegedly committed by Masi. See *Morse*, 231 Mich App at 437. AU alleged that Uncle Robby forced her to perform fellatio, kissed her, and watched pornography with her. Conversely, AU testified at the preliminary examination that Masi inserted his penis into her vagina on multiple occasions, groped AU's buttocks, and forced AU to kiss and perform oral sex on Ryder. Because Uncle Robby's alleged abuse of AU was not "significantly similar" to Masi's alleged abuse of AU, and Uncle Robby was not convicted of criminal sexual conduct for his alleged abuse of AU, the trial court did not abuse its discretion by excluding this evidence.

Masi also contends that the trial court erred by failing to hold an *in camera* hearing on the record to facilitate appellate review as it relates to Masi's request to admit evidence of Uncle Robby's alleged sexual abuse of AU. This Court has held that an *in camera* hearing to determine the admissibility of evidence of a complainant's past sexual conduct must be held "on the record, but outside the presence of the jury and the public, thereby facilitating the task of appellate review." *Byrne*, 199 Mich App at 679. MCR 2.613(A) provides that "an error or defect in anything done or omitted by the court . . . is not ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." The trial court's failure to hold an *in camera* hearing on the record for evidence related to Uncle Robby's alleged sexual abuse of AU was not "inconsistent with substantial justice." See MCR 2.613(A). It is undisputed that Uncle Robby was not charged or convicted of sexual abuse involving AU, thereby failing under *Morse*. The parties presented their arguments on this issue to the court in Masi's motion to admit evidence, in the prosecution's response to this motion, and during a hearing on the motion. The trial court also issued a written opinion on its decision. Although the trial court should have held an on-the-record hearing, the lower court record on this issue is sufficient for appellate review. As such, Masi was not denied substantial justice and we will not reverse on this basis.

D. SEXUAL CONDUCT BETWEEN COMPLAINANTS

Masi also argues that the trial court erred by denying the admission of evidence regarding past sexual conduct between AU and SU.

As correctly noted by the trial court, documents provided by Masi for the *in camera* review did not contain evidence of sexual conduct between AU and SU. Masi attached evidence of sexual conduct between AU and SU to his motion for reconsideration. But in denying this motion, the trial court noted that Masi failed to provide this evidence to the court when it produced documents to the court for the *in camera* inspection. "[A] trial court has discretion on a motion for

---

[6] At oral argument, both parties disputed the wisdom of the test enunciated in *Morse*—particularly its requirement of a criminal conviction—and contended that *Morse* was wrongly decided. While we appreciate the parties' compelling arguments on this point, we are bound to follow *Morse* as a published opinion of this Court. See MCR 7.215(C)(2); *People v Bennett*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354903); slip op at 5.

-9-

reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). Thus, the trial court did not abuse its discretion in denying the admission of evidence of past sexual conduct between AU and SU or in denying Masi's motion for reconsideration on this issue.

In any event, evidence of sexual conduct between AU and SU falls squarely within the rape-shield statute's exclusion for evidence of "specific instances of the victim's sexual conduct," and the evidence does not fall within either of the statute's narrow exceptions. See MCL 750.520j(1). Nor is admission of the evidence otherwise necessary to preserve Masi's constitutional rights. No one was convicted with respect to the evidence that AU engaged in sexual contact with SU, and the facts underlying the incident are not "significantly similar" to the allegations here. See *Morse*, 231 Mich App at 437. The evidence of sexual conduct between AU and SU involves a 2012 report describing statements by four-year-old SU that AU made SU straddle her and that AU touched SU's private parts. This isolated incident between two young children is not "significantly similar" to the litany of allegations raised by AU and SU against Masi involving vaginal penetration, oral sex, and other instances of sexual contact. The trial court, therefore, did not abuse its discretion by excluding this evidence.

## E. RIGHT TO PRESENT A DEFENSE

Lastly, Masi argues that exclusion of the above-described evidence at trial will deprive him of his constitutional right to present a defense and deny him a fair trial.

"A defendant has a constitutionally guaranteed right to present a defense . . . ." *People v Zitka*, 335 Mich App 324, 332; 966 NW2d 786 (2020) (quotation marks and citation omitted). "But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 333 (quotation marks and citation omitted). Thus, "the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). The rules of evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008), quoting *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998), in turn quoting *Rock v Arkansas*, 483 US 44, 56; 107 S Ct 2704; 97 L Ed 2d 37 (1987).

The rape-shield statute reflects a reasonable legislative determination that in most cases, evidence of a victim's sexual conduct is irrelevant. See *Arenda*, 416 Mich at 10. It also reflects the Legislature's belief that "inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." *Id*. Thus, the evidentiary guardrails imposed by the rape-shield statute are not arbitrary, nor are they disproportionate to the important purposes they serve. See *Unger*, 278 Mich App at 250. As discussed, the trial court did not abuse its discretion in excluding the evidence of prior sexual abuse by Uncle Robby and sexual conduct

between AU and SU, so the trial court did not deny Masi his constitutional right to present a defense.[7]

## IV. DISCOVERY OF PRIVILEGED RECORDS

Masi next argues that the trial court erred by denying his motion for discovery of the complainants' privileged medical, psychological, and school records. "A trial court's decision regarding discovery is reviewed for [an] abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). And the interpretation of a court rule presents a question of law that we review de novo." *Id*.

"There is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). MCR 6.201(C)(1) provides that "there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege . . . ." The complainants' medical, psychological, and school records sought by Masi are privileged documents. See MCL 600.2157 (physician-patient privilege); MCL 330.1700(h) (psychologist-patient privilege); MCL 600.2165 (educational professional-student privilege).

In *People v Stanaway*, 446 Mich 643, 649; 521 NW2d 557 (1994), our Supreme Court considered whether privileged records must be made available to the defendant so that the defendant could "obtain evidence necessary to his defense in a criminal trial." The Court explained:

> [W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant. [*Stanaway*, 446 Mich at 649-650.]

"The determination to be made after looking at the record is whether the evidence is material and necessary to the defense, with material meaning exculpatory evidence capable of raising a reasonable doubt about the defendant's guilt." *Id*. at 679 n 40. When reviewing the privileged information, the trial court must "decide whether the evidence suspected of being contained in the records was in fact there." *Id*. But "disclosure should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 680 (quotation marks and citation omitted).

---

[7] To support Masi's defense theory, the trial court has already ruled that Masi may introduce evidence of specific instances of the complainants' untruthfulness from the CPS and family services records, and evidence that the complainants had a motive to falsely accuse Masi because they wanted to live with Maya Rushing, their paternal cousin.

Consistent with *Stanaway*, MCR 6.201(C) provides:

> (2) If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.

> \* \* \*

> (b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony.

On appeal, Masi claims that because foster care records about AU's participation in therapy—already in Masi's possession—detail AU's issues with anger, aggression, lying, and sexual abuse, the privileged records must also contain this information. Thus, Masi asserts, the privileged records reviewed by the trial court must contain information that is necessary to the defense. Masi's belief is unavailing. We thoroughly reviewed the complainants' privileged records that were reviewed by the trial court *in camera*, and the trial court correctly found that the records did not contain "evidence necessary to the defense . . . ." MCR 6.201(C)(2)(b).

Medical records reviewed by the trial court detail routine office visits for AU, SU, and MU. The privileged records did not contain any evidence about the untruthfulness of the complainants, evidence of sexual behavior or pornographic exposure involving the complainants, or evidence of a history of trauma suffered by the complainants. The only portion of the privileged records that has any relation to this case is a singular reference in MU's medical records in 2021 to "[a]lleged child sexual abuse." Considering its date, this reference likely refers to the allegations against Masi. Regardless, there is no other information about this alleged abuse in the medical records, so these records are not "material information necessary to the defense." MCR 6.201(C)(2). That is, the medical records do not contain "exculpatory evidence capable of raising a reasonable doubt about the defendant's guilt." *Stanaway*, 446 Mich at 679 n 40. In addition, records from the complainants' schools were unavailable for the trial court's review because no counseling or behavioral records pertaining to the complainants were on file at those facilities. The prosecution also subpoenaed all counseling records pertaining to AU's therapy services between 2011 and 2013, and the facility responded that the requested records were destroyed by flooding in August 2014. Thus, the court could not review the counseling records from this facility because any records no longer exist. Masi is not entitled to the discovery of AU's therapy records because "[i]f a record does not exist, it cannot be produced." *Coblentz v Novi*, 475 Mich 558, 568; 719 NW2d 73 (2006). In sum, the trial court did not abuse its discretion by denying Masi access to the privileged records the court reviewed *in camera* because these records did not contain material evidence necessary to the defense.

## V.  CONCLUSION

Evidence that a victim viewed lawful pornography, without more, is not "sexual conduct" subject to the exclusionary bar of the rape-shield statute.  Therefore, we remand this case to the trial court for consideration whether evidence that SU viewed pornography is otherwise admissible under the rules of evidence.  We affirm the trial court's orders excluding evidence of prior sexual conduct by the complainants and denying discovery of the complainants' privileged records.

Affirmed in part and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Noah P. Hood
/s/ Thomas C. Cameron

-13-